NATIONAL FIRE INSURANCE OF HARTFORD, Plaintiff-Appellee, v. WALSH CONSTRUCTION COMPANY *et al.*, Defendants-Appellants.

First District (1st Division)    No. 1—08—0569

Opinion filed May 18, 2009.—Rehearing denied June 16, 2009.

William E. Spizzirri, of Kralovec & Marquard, Chtrd., of Chicago, for appellants.

Hope G. Nightingale, Carrie A. Durkin, and Laura L. Milnichuk, all of Litchfield Cavo LLP, of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

The circuit court granted summary judgment in favor of the plaintiff, National Fire Insurance of Hartford, finding it had no duty to defend the defendants, Walsh Construction Company and The Chicago Historical Society (the CHS), in an underlying construction negligence suit filed by an employee of a subcontractor. We affirm the circuit court's ruling that the underlying negligence suit alleges no facts that fall potentially within the coverage of National Fire's commercial general liability policy (CGL), which names the defendants as additional insureds. We also hold that the circuit court correctly rejected any consideration of the third-party complaint filed by Walsh against the subcontractor, as the primary insured, in deciding that National Fire had no duty to defend.

## BACKGROUND

The CHS hired Walsh as a general contractor for the renovation of its building at 1600 North Clark Street in Chicago. Walsh subcontracted with J.L. Adler Roofing and Sheet Metal, Inc. (Adler), to provide labor and materials for the roofing portion of the project. As part of the agreement between Walsh and Adler, Walsh and the CHS were named additional insureds on Adler's CGL policy with National Fire.

In its CGL policy, National Fire limited coverage to Adler's own work and excluded coverage to the additional insureds for liability arising from their sole negligence.

"That person or organization is an additional insured solely for liability due to [Adler's] negligence and specifically resulting from 'your work' for the additional insured which is the subject of the

written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured."

On December 7, 2005, Adler employee Ira Brainerd was injured while performing work on the CHS's roof. On August 18, 2006, Brainerd filed a two-count complaint against Walsh and the CHS, alleging their negligent acts or omissions caused his injuries. Specifically, the complaint alleged:

"13. *** Plaintiff, IRA BRAINERD, was performing work on the roof at said location in the scope of his employment for ADLER.

14. *** [A]n employee of Defendant WALSH moved a section of the roof's support causing the roof deck on which Plaintiff was working to fall.

15. That as a result of the roof deck falling, Plaintiff fell and sustained serious injuries."

Brainerd alleged Walsh "retained control" and "exercised control" of the work being performed on the CHS jobsite. Brainerd made similar allegations against the CHS as the owner of the property and as Walsh's principal.

Walsh tendered the Brainerd complaint to National Fire for defense and indemnification. National Fire rejected the tender, concluding the complaint made no allegation of negligence on the part of Adler. Because the complaint grounded liability on the defendants' sole negligence, the additional insured endorsement precluded coverage.

On April 10, 2007, National Fire filed a complaint seeking a declaration that it had no obligation to defend Walsh or the CHS in the Brainerd action. National Fire restated its contention that no coverage extended to the defendants because Brainerd's complaint alleges only direct negligence against Walsh and vicarious negligence against the CHS. The complaint contains no factual allegations that might support a claim of negligence against Adler. The defendants answered, denying National Fire's reading of the allegations in Brainerd's complaint as pointing to negligence solely on the part of the defendants.

On June 12, 2007, Walsh filed a third-party complaint against Adler in the underlying Brainerd action. Walsh principally alleged that Brainerd was injured in the scope of his employment for Adler, that Adler failed to provide Brainerd with a safe place to work, failed to provide the support for Brainerd to safely complete his work, and failed to properly supervise Brainerd while he worked on the roof, all of which proximately caused or contributed to Brainerd's injury. While Walsh denied liability for Brainerd's injuries, it claimed that if it were found liable, Adler would be liable for its *pro rata* share of the com-

mon liability pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2006)).

The defendants and National Fire filed cross-motions for summary judgment in the declaratory judgment suit. Judge Agran granted National Fire's motion and denied the defendants'. He agreed with National Fire: the Brainerd complaint alleged only negligence against Walsh and the CHS. Thus, National Fire had no duty to defend because coverage was precluded under the additional insured endorsement. Judge Agran refused to consider the allegations in Walsh's third-party complaint because it was filed "to pick up that which the underlying complaint didn't [state]."

The defendants timely appeal.

## ANALYSIS

The factual situation presented here is standard fare in the construction industry: An employee of a subcontractor is injured while working at a construction jobsite; the only recourse for an injured worker outside the Illinois Workers' Compensation Act (820 ILCS 305/ 5(a) (West 2006)) is a suit against the general contractor and the property owner. Aware of this potential liability, the general contractor and property owner require they be named as additional insureds in the CGL policy the subcontractor must carry. The CGL carrier, well aware of this industry practice, crafts its policy to limit coverage to the additional insureds to negligence resulting from the primary insured's work. As National Fire points out in its brief, "Like so many others, this coverage dispute arose from the gap between the general contractors' desire for total protection and the scope of coverage that the subcontractor purchased from its insurer." See, *e.g., Pekin Insurance Co. v. Beu,* 376 Ill. App. 3d 294, 876 N.E.2d 167 (2007); *National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.,* 329 Ill. App. 3d 228, 769 N.E.2d 977 (2002); *Village of Hoffman Estates v. Cincinnati Insurance Co.,* 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996).

In resolving the tension between the coverage a CGL carrier extends to a general contractor as an additional insured and the desire of a general contractor to look outside its own insurer for protection against suits by an employee of a subcontractor, general rules have been adopted by the courts regarding a CGL insurer's duty to defend. "A court must compare the allegations in the underlying complaint to the policy language ***." *General Agents Insurance Co. of America v. Midwest Sporting Goods Co.,* 215 Ill. 2d 146, 154, 828 N.E.2d 1092 (2005); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 107-08, 607 N.E.2d 1204 (1992). The allegations in the

underlying complaint must be liberally construed in favor of the insured. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307 (2006). " 'An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.' " (Emphasis omitted.) *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 359, 785 N.E.2d 905 (2003), quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). Where the insurer relies on a provision that it contends excludes coverage to reject a tender of defense, we review the applicability of the provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560, 734 N.E.2d 50 (2000), quoting *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564, 571 N.E.2d 256 (1991).

Because this case turns on whether there was "sole negligence" on the part of the defendants for the claimed injury, which would preclude coverage under the additional insured endorsement provision of National Fire's policy, we begin our review with the allegations in the construction negligence suit filed by Brainerd, the employee of the primary insured.

## Brainerd's Complaint

Judge Agran ruled that no duty to defend on the part of National Fire was triggered by the Brainerd complaint because the complaint placed sole blame for Brainerd's injury on Walsh's direct negligence. In reviewing this ruling, we take note that this appeal is before us on a grant of summary judgment. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149 (2007). Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that no material questions of fact exist and only the issue of law regarding the construction of an insurance policy is present. *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339, 842 N.E.2d 170 (2005). Our review is *de novo. Virginia Surety Co.*, 224 Ill. 2d at 556.

■ In our review of the facts alleged in the underlying construction negligence suit, we note that the defendants do not claim that the allegations in the construction negligence suit are themselves subject

to different interpretations such as to give rise to a material question of fact. See, *e.g.*, *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 866, 531 N.E.2d 913 (1988) (a court cannot "adjudicate disputed facts"). In fact, the defendants concede the allegations do not expressly accuse Adler of any negligence. Rather, to support their contention that the summary judgment was wrongly granted to National Fire and wrongly denied to them, the defendants rely on Brainerd's allegations that he was not provided with a safe place to work and was not warned that a section of the structural support of the roof was being moved. The defendants contend in their main brief, "if Brainerd was injured because he was not provided a safe place to work, the breach of any such duty would not only be that of the Defendants, but also of Brainerd's employer Adler Roofing."

It may certainly be true that Brainerd's employer, Adler, and Walsh, as the general contractor exercising the requisite control over the jobsite, shared a duty to provide Brainerd with a safe place to work. See, *e.g.*, *Garcia v. Wooton Construction, Ltd.*, 387 Ill. App. 3d 497, 505, 900 N.E.2d 726 (2008) (a general contractor may be liable for the acts or omissions of a subcontractor where it retains sufficient control of the work). The question before us, however, is whether National Fire's exclusion in the additional insured endorsement for the defendants' "sole negligence" has been triggered. We review *de novo* National Fire's exclusion provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage" as Judge Agran ruled. *Atlantic Mutual Insurance Co.*, 315 Ill. App. 3d at 560, quoting *Bituminous Casualty Corp.*, 212 Ill. App. 3d at 564. Stated differently, we examine the allegations in the underlying complaint, liberally construed in favor of Walsh and the CHS, to determine whether they give rise to facts that Adler may in fact be found liable for the injury claimed in Brainerd's negligence suit. In order to be found liable, it must be shown that Adler proximately caused or contributed to Brainerd's injury. See *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 974, 560 N.E.2d 888 (1990) (summary judgment is proper where there is "nothing in the record from which it can be inferred that any alleged act or omission of defendant was the proximate cause of decedent's injuries").

At oral argument, it was acknowledged that in the universe of construction negligence suits, there are cases where the claimed injury arises solely from the negligence of the general contractor. See *L.J. Dodd Construction, Inc. v. Federated Mutual Insurance Co.*, 365 Ill. App. 3d 260, 848 N.E.2d 656 (2006). The real question before us is whether this is such a case.

In *L.J. Dodd Construction, Inc.*, the Second District affirmed the circuit court's determination that the CGL carrier had no duty to defend the general contractor in an underlying construction negligence suit. As in this case, the general contractor was an additional insured on a subcontractor's CGL policy, with a similar exclusion for liability resulting from the general contractor's " 'sole negligence.' " *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 261. The injured employee worked for a second-level subcontractor that subcontracted with the primary insured of the CGL policy at issue. In his negligence complaint, the injured worker alleged that an employee of the general contractor "negligently ran over [him] with a forklift." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 261.

The general contractor tendered its defense in the underlying negligence suit to the CGL carrier of the first-level subcontractor. The CGL policy provided additional insured coverage if liability arose out of the primary insured's " 'ongoing operations performed for [the general contractor].' " *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 261. The injured worker was not an employee of the primary insured and, thus, the Second District confronted the issue whether the injured worker was engaged in "ongoing operations" on behalf of the primary insured, which, in turn, were performed for the general contractor. The general contractor asserted that the "ongoing operations" coverage applied because the injured worker would not have been on the jobsite " 'but for' " the primary insured's work for the general contractor. *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 263. While the primary insured subcontracted with the employer of the injured worker, the general contractor argued that the "but for" connection between the primary insured and the general contractor "is sufficient to establish that [the general contractor's] potential liability to [the injured party] arose out of [the primary insured's] ongoing operations on behalf of [the general contractor]." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 263.

Rather than sort through the connections among the three parties—the general contractor, the first-level subcontractor and the second-level subcontractor—the court dispensed with the general contractor's argument for coverage under the "ongoing operations" clause by noting that "the Policy excludes coverage for liability resulting from [the general contractor's] sole negligence." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 264. The Second District rejected the general contractor's claim that it "was possible that someone or something besides [the general contractor] was responsible *** [so that] the Policy's 'sole negligence' coverage exclusion did not apply." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 261. In examining the

negligence complaint, the court found that the injured worker claimed the general contractor "single-handedly, negligently caused [the] injuries." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 266. There were no facts, either pleaded or " 'true but unpleaded' " that "might show that, despite [the injured employee's] assertions, someone or something other than [the general contractor's] negligence is responsible for [the employee's] injuries." *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 264. While the court made note that the negligence complaint failed to even mention the primary insured, no significance in that observation was noted in the court's analysis on the "sole negligence" exclusion. *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 263. Rather, the court compared the allegations in the underlying complaint to the policy at issue to conclude that the complaint failed to state any claim that was within or potentially within the coverage. *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 264. We reach the same conclusion here.

The negligent act alleged by Brainerd in his construction negligence complaint concerns only an act by a Walsh employee: "[A]n employee of Defendant Walsh moved a section of the roof's support causing the roof deck on which the Plaintiff was working to fall." The defendants' only response in the face of this allegation is to suggest the possibility that Adler might share liability as well based on its duty to provide a safe work place for its employees.

In reality, the defendants' claim is that *any* injury on the jobsite triggers a duty to defend on behalf of the CGL carrier because it necessarily follows that the subcontractor must have breached its duty to provide a safe work place. The rule advocated by the defendants would enlarge the potential liability of a subcontractor far beyond the coverage it purchased from its CGL insurer for the subcontractor's negligence arising from its work for the general contractor as an additional insured. In virtually every construction negligence case involving a claim by an injured employee of a subcontractor, the claim can be made by the general contractor that the duty to provide a safe work place to the injured worker was breached by the subcontractor, entitling the general contractor to coverage. Such a rule would effectively render meaningless the limitation on coverage in a CGL policy for additional insureds as National Fire has written here.

We reject the defendants' contention that the mere fact that an employee of a primary insured is injured on the jobsite is, by itself, sufficient to give rise to an inference of negligence on the part of Adler so as to trigger a duty to defend on the part of National Fire. More than some unspecified breach of the subcontractor's duty to provide a safe work place is required to support a claim that the negligence

complaint implicates negligence on the part of the subcontractor, too. See *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 264 (underlying complaint alleged sole negligence on the part of general contractor).

On our *de novo* review of the Brainerd complaint, we agree with Judge Agran that this is a case where the alleged negligence falls on no one other than the general contractor.[1] Our review of the Brainerd complaint reveals no factual allegation on which the defendants might hang Adler's potential liability. See *Kellman*, 202 Ill. App. 3d at 974 (more than the mere "occurrence of an accident [is required to] support an inference of negligence"). While the connections between the parties before us are not as entangled as in *L.J. Dodd Construction, Inc.*, the defendants here have pointed to no facts that support their claim that Adler potentially shares liability with the Walsh employee that, according to the construction negligence suit, "moved a section of the roof's support causing the roof deck" to collapse and injure Brainerd. The facts alleged in Brainerd's complaint do not give rise to a duty to defend on the part of National Fire.[2]

## Walsh's Third-Party Complaint

The defendants next challenge Judge Agran's refusal to consider Walsh's third-party complaint against Adler in deciding that National Fire had no duty to defend. Judge Agran ruled that the circumstances of this case dictated that only the underlying negligence suit be considered. Judge Agran rejected consideration of Walsh's third-party complaint because it did nothing more than recast Brainerd's complaint in terms of Adler's negligence to bolster the defendants' claim that the injury Brainerd sustained was not solely due to the defendants' negligence. To support their contention that Judge Agran erred, the defendants point to our decision in *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 886 N.E.2d 1166 (2008).

---

[1]By this statement we offer no opinion on the vicarious liability of the CHS for Walsh's negligence.

[2]Because we find the underlying complaint alleges negligence only on the part of the defendants, we do not address National Fire's claim that under the provisions of the policy, coverage is triggered for the additional insureds only where "Adler's negligence was the sole source of Defendants' liability." *Cf. Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011, 1013-14, 670 N.E.2d 874 (1996) (where coverage is provided " 'only with respect to liability incurred solely as a result of some act or omission of the named insured' " (emphasis omitted), the named insured's acts or omissions must be the sole ground for alleging liability against the additional insured).

In *Holabird & Root*, the plaintiff filed suit against the property owner, the general contractor, and L&L Engineers, an electrical subcontractor, alleging she was injured from ultraviolet (UV) rays from the florescent lights installed in the building in which she worked. Her complaint alleged the defendants failed to provide a safe work area, failed to design and construct the space in a safe manner, and failed to educate themselves about the dangers of UV rays and select safe lighting. The property owner filed a third-party complaint against Metrick, another electrical subcontractor. The property owner alleged Metrick was in charge of installing the lights and that it failed to educate itself about the dangers of UV rays, failed to select safe lighting, and failed to consult with the defendants regarding its lighting selection.

The agreement between the general contractor and Metrick required the general contractor to be added as an additional insured on Metrick's policy, that provided coverage to the general contractor " 'only with respect to liability arising out of "[Metrick's] work" for that insured by or for [Metrick].' " *Holabird & Root*, 382 Ill. App. 3d at 1021. On cross-motions for summary judgment in the insurer's declaratory judgment action, the circuit court held the insurer's duty to defend was triggered. We affirmed.

Looking to the "arising out of" language of the additional insured endorsement, we concluded that the general contractor needed to show only that "but for" the work of Metrick (the named insured), the general contractor was potentially liable to the plaintiff. *Holabird & Root*, 382 Ill. App. 3d at 1023. Although the plaintiff's complaint did not specifically allege that Metrick was negligent, it did allege that her injuries arose or potentially arose from the lighting installation. We then looked to the third-party complaint filed by the property owner in the underlying action. We noted that the third-party complaint alleged that the installation of the lighting was Metrick's task. Thus, taking the facts as liberally construed in favor of the proposed additional insured, we agreed with the circuit court that the insurer had a duty to defend the general contractor in the underlying tort action.

We expressly rejected the insurer's contention that only the plaintiff's complaint should have been considered. We noted a "long line of cases" demonstrating extrinsic evidence may be relied upon in determining an insurer's duty to defend, and concluded the circuit court "should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend." *Holabird & Root*, 382 Ill. App. 3d at 1031-32. We reasoned "the trial court ' "need not wear judicial blinders" ' and may look beyond the complaint at other evidence appropriate to a

motion for summary judgment." *Holabird & Root*, 382 Ill. App. 3d at 1032, quoting *West Bend Mutual Insurance Co. v. Sundance Homes, Inc.*, 238 Ill. App. 3d 335, 338, 606 N.E.2d 326 (1992).[3]

A court's consideration of a third-party complaint is limited, however. In *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 890 N.E.2d 582 (2008), the companion case to *Holabird & Root*, we considered whether this exception once again applied. As in *Holabird & Root*, only the third-party complaint by the putative additional insured raised allegations of negligence against Metrick, the named insured. In *DePaul University*, we rejected consideration of the third-party complaint because it was prepared and filed by the property owner, the party seeking coverage in that case. We declined to allow a putative additional insured to bolster its claim of coverage by referencing its own third-party complaint. As we noted at oral argument, we fail to see what a party claiming to be an additional insured could state in its third-party complaint that it could not otherwise present in the declaratory judgment action. In that context, a third-party complaint cannot bolster a third-party plaintiff's claim, as a putative additional insured, that the facts in the underlying construction negligence complaint potentially fall within the policy's coverage. *DePaul University*, 383 Ill. App. 3d at 180.

■ Here, Walsh and the CHS claim support from the third-party complaint filed by Walsh, a party seeking additional insured coverage. The CHS, as Walsh's principal, stands with Walsh as a nominal plaintiff in Walsh's third-party complaint. This case is therefore like *DePaul University* and unlike *Holabird & Root*.

Walsh's third-party complaint faces an additional strike against its consideration. Walsh filed its third-party pleading *after* National Fire brought the instant declaratory judgment action. We agree with Judge Agran: the timing of the filing suggests the third-party complaint sought to add what the underlying construction negligence complaint did not state, that Adler was somehow contributorily negligent.

Judge Agran properly refused to consider Walsh's third-party complaint in deciding whether National Fire had a duty to defend.

---

[3]To the extent that " 'true but unpleaded facts [in the underlying negligence complaint]' that are known to the insurer" (such as Metrick being the installer of lights that caused the injury in *Holabird & Root*) arise from factual allegations in a third-party complaint, our decision in *Holabird & Root* is consistent with the observation made by the Second District that a court may look "beyond the allegations of the underlying complaint" to determine whether a duty to defend exists. *L.J. Dodd Construction, Inc.*, 365 Ill. App. 3d at 262-63.

## CONCLUSION

The circuit court properly determined that the underlying construction negligence complaint alleged the defendants' sole negligence as the cause for Brainerd's injury. Thus, it is clear and free from doubt that the CGL policy's "sole negligence" exclusion applies. The circuit court also properly refused to consider the allegations in the third-party complaint, filed by Walsh after the instant litigation arose, in assessing whether a duty to defend was triggered. We affirm the circuit court's order granting National Fire's motion for summary judgment and denying that of the defendants.

Affirmed.

R. GORDON, P.J., and HALL, J., concur.