In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 19-3315

SCOTTSDALE INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

COLUMBIA INSURANCE GROUP, INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-CV-03657 — **John Z. Lee**, *Judge.*

---

ARGUED MAY 28, 2020 — DECIDED AUGUST 26, 2020

---

Before MANION, KANNE, and WOOD *Circuit Judges.*

MANION, *Circuit Judge.* While performing HVAC work at a construction site in Chicago, Eduardo Guzman fell approximately 22 feet through an unguarded opening in the second floor, sustaining serious injuries. Guzman sued Rockwell Properties (the owner), Prairie Management & Development (the manager), and others in state court.

The issue before us is whether Columbia Insurance Group (Guzman's employers' insurer) owes a duty to defend Rockwell and Prairie. Scottsdale Insurance Company (Rockwell's insurer) wants Columbia to take over the defense. The district court granted Scottsdale judgment on the pleadings, declaring Columbia has a duty to defend Rockwell and Prairie, and ordering Columbia to reimburse prior defense costs. We affirm.

## I. Background

We review a ruling on a Rule 12(c) motion for judgment on the pleadings *de novo* and we construe the facts in the light most favorable to the nonmovant. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

### A. Columbia insures TDH

TDH Mechanical provides heating, ventilation, and air conditioning services. It employed Eduardo Guzman.

TDH bought an insurance policy from Columbia Insurance Group to cover the period from April 12, 2016, to April 12, 2017. The policy contains this "insuring agreement":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages … .

The policy also includes an endorsement adding additional insureds under particular circumstances:

> The following amends **SECTION II—Liability, C. Who Is An Insured:**
>
> **Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. Liability for "bodily injury" or "property damage" caused, in whole, or in part, by "your work" arising out of your ongoing operations performed for that additional insured and included in the "products-completed operations hazard".

**B. TDH contracts with Prairie and Rockwell**

Rockwell Properties owned a piece of property under construction in Chicago. Prairie Management & Development was the construction manager at this property. In February 2017, Prairie and Rockwell contracted with TDH to provide HVAC services at this property. That contract contains two particularly relevant paragraphs:

> 14. **Contractor [TDH] hereby** assumes responsibility and liability in and for any and all damages or injury of any kind or nature whatever to all persons and to all property growing out of or resulting from the act or omission of the Subcontractor in the performance of the Work provided for in this Contract. … Contractor [TDH],

to the extent permitted by law, agrees to indemnify, defend, save and hold harmless the Owner [Rockwell] against any and all claims, damages, loss or expenses (including court costs and attorney's fees) by reason of the liability imposed by law upon the Contractor, and/or Owner for damages because of bodily injuries, including death at any time there from [sic], sustained by any person or persons; or on account of damage to property arising out of or on account of or in consequence of the performance of this Contract where such injuries to persons or damage to property are due or claimed to be due to any negligence of Contractor's employees, agents or servants. Contractor shall protect and indemnify Owner against any loss or damage suffered by anyone arising through Contractor's negligence, or those employed by Contractor may have by reason thereof, or on account of being charged therewith … .

15. **Prior to** commencing any work, the Contractor shall submit a certification of insurance acceptable to the Owner naming the Owner (Rockwell Properties, LLC) and Prairie Management & Development, Inc. as Additional Insureds for the duration of the job.

The record also includes a Certificate of Liability Insurance dated February 9, 2017, identifying Columbia as the commercial general liability insurer, TDH as the insured, and Rockwell and Prairie as additional insureds.

## C. Guzman falls and is injured

On March 13, 2017, Guzman was performing HVAC work at the Chicago building when he fell "through an unguarded opening" in the second floor. He fell 22 feet. He suffered serious injuries, but survived.

Guzman sued Prairie, Rockwell, and others for negligence ("underlying suit").[1] He claims, among other things, that Prairie and Rockwell "carelessly and negligently failed to supervise, inspect, monitor, and coordinate the work of the subcontractors on the construction site in order to prevent and protect Plaintiff from falling through the unprotected opening in the floor … ." He also claims that Prairie and Rockwell "carelessly and negligently failed to properly supervise the construction site and monitor work of [their] subcontractors, and thereby allowed [their] subcontractors to engage in the unsafe practice of not covering or guarding the unmarked opening in the floor with appropriate protection which exposed Plaintiff to the risk of falling through the opening." Guzman did not sue TDH, and his suit does not specifically mention it.

Several defendants in the underlying suit (besides Prairie and Rockwell) filed third-party complaints against TDH for contribution, alleging TDH negligently failed to train its employees on multiple issues, failed to maintain a safe workplace, failed to provide proper safety equipment, allowed the opening to remain open and unprotected, failed to supervise

---

[1] The underlying suit's most-recent amended complaint that is part of the record before us is Guzman's second amended complaint. Columbia has advanced no arguments that any subsequent amended complaint changes the allegations in any relevant way.

or inspect the construction site, failed to supervise or inspect the work of subcontractors, failed to warn Guzman of the opening, failed to provide adequate illumination, failed to supervise the HVAC work of its employees including Guzman, failed to enforce its own safety rules, and failed to provide adequate safeguards to prevent the injury.

Scottsdale insured Rockwell. Scottsdale has defended Rockwell and Prairie in the underlying suit. Columbia refuses to defend them. Scottsdale wants Columbia to take over their defense, and to reimburse Scottsdale for the defense costs thus incurred. Scottsdale filed this suit, seeking a declaration that Columbia has a duty to defend and indemnify Rockwell and Prairie. Scottsdale moved for judgment on the pleadings. The district court granted this motion in part, declaring Columbia owes a duty to defend Prairie and Rockwell, ordering Columbia to pay Scottsdale over $50,000 for defense costs through August 2019, and leaving the issue of indemnity for another day. Columbia appeals.

## II. Discussion

### A. Law

Procedurally, we review a judgment on the pleadings *de novo*. When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief. *See Housing Auth. Risk Retention Grp. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

Substantively, the parties agree Illinois law applies. Insurance policies are contracts. Under Illinois law, "the general rules governing the interpretation of other types of contracts

also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The goal in interpreting an insurance policy "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*

An insurer's duty to defend is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). To determine whether an insurer has a duty to defend, a court compares the underlying complaint's allegations (liberally construed in the insured's favor) to the policy's language. *Id.* If the underlying complaint "alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005).

"An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage." *Illinois Tool Works, Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 428 (Ill. App. Ct. 2015). An insurer must defend when "the underlying allegations do not foreclose coverage." *Id.* When an insurer relies on a provision that it contends excludes coverage, courts "review the applicability of the provision to ensure it is clear and free from doubt that the policy's exclusion prevents coverage." *National Fire Ins. of Hartford v. Walsh Const. Co.*, 909 N.E.2d 285, 288 (Ill. App. Ct. 2009) (internal quotation marks omitted).

A court may look beyond the underlying complaint to third-party complaints when determining whether there is a duty to defend, so long as the third-party complaints are not "self-serving" or filed by the additional insured seeking

coverage. *See Farmers Auto. Ins. Ass'n v. Neumann*, 28 N.E.3d 830, 834 (Ill. App. Ct. 2015); *Illinois Embacaso Ins. Co. v. Waukegan Steel Sales Inc.*, 996 N.E.2d 247, 254 (Ill. App. Ct. 2013); *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018–20 (Ill. 2010). Any doubts about the duty to defend are resolved in favor of the insured. *Hilco Trading, LLC v. Liberty Surplus Ins. Corp.*, 8 N.E.3d 166, 174 (Ill. App. Ct. 2014).

**B. Analysis**

*1. Columbia's policy language, and comparison to underlying complaint*

Columbia insured TDH. The Columbia policy said it would include another organization as an additional insured if TDH and that organization agreed in writing that that organization would be added as an additional insured.

Well, TDH agreed in writing that it would have Prairie and Rockwell named as additional insureds on TDH's policy. Indeed, though it is superfluous to our analysis, a Certificate of Liability Insurance was issued certifying Rockwell and Prairie were additional insureds on the Columbia commercial general liability policy. And as the district court observed, the parties do not dispute that the TDH HVAC contract provided that Prairie and Rockwell would be named additional insureds to TDH's policy. So Prairie and Rockwell are additional insureds on the Columbia policy, at least for some claims. So far so good for Scottsdale.

But the Columbia policy had a limitation. It said the other organization would only be an additional insured with respect to liability arising out of TDH's ongoing operations performed for this other organization.

We agree with the district court that this "arising out of" limitation in the Columbia policy does not eliminate Columbia's duty to defend in the underlying suit. This limitation does not keep Columbia off the hook to defend because Prairie's and Rockwell's liability for the fall potentially (and that is enough) arises in part (and that is enough) out of TDH's then-ongoing operations performed for Prairie and Rockwell, TDH's work on the project. For the duty to defend, it does not matter if TDH itself is actually ultimately liable, and it does not matter that the underlying suit does not name TDH as a defendant, or mention it. We agree with the district court that the mere fact that Guzman did not bring a negligence claim against TDH does not mean Prairie and Rockwell cannot be liable to Guzman based on and arising out of TDH's then-ongoing operations performed for them.

Columbia argues the underlying complaint does not allege any facts that bring the case even potentially within coverage by Columbia. We disagree. The underlying complaint specifically alleges Prairie and Rockwell "negligently failed to supervise, inspect, monitor, and coordinate the work of the subcontractors on the construction site in order to prevent and protect Plaintiff from falling through the unprotected opening in the floor" and that Prairie and Rockwell "negligently failed to properly supervise the construction site and monitor work of [their] subcontractors, and thereby allowed [their] subcontractors to engage in the unsafe practice of not covering or guarding the unmarked opening in the floor with appropriate protection which exposed Plaintiff to the risk of falling through the opening." TDH is potentially one of those subcontractors. The underlying suit suggests, and does not foreclose the possibility, that some fault lies with TDH. The underlying suit suggests, and does not foreclose the

possibility, that any liability of Prairie or Rockwell arises out of TDH's then-ongoing operations performed for Prairie and Rockwell. It is not clear from the face of the underlying complaint that the allegations fail to state facts bringing the case within (or potentially within) the policy's coverage, so Columbia cannot refuse to defend. *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012).[2]

### 2. *Third-party complaints*

Moreover, several defendants in the underlying suit (besides Prairie and Rockwell) filed third-party complaints against TDH for contribution. We can consider these third-party complaints. They make it even clearer that TDH *might* have been at fault. They allege TDH negligently failed to train its employees on multiple issues, failed to maintain a safe workplace, failed to provide proper safety equipment, allowed the opening to remain open and unprotected, failed to

---

[2] The Columbia endorsement includes this incomplete sentence: "Liability for 'bodily injury' or 'property damage' caused, in whole, or in part, by 'your work' arising out of your ongoing operations performed for that additional insured and included in the 'products-complete operations hazard.'" Based on this, Columbia argues its policy explicitly provides coverage for additional insureds only when the liability was caused, in part or in whole, by TDH's work. Scottsdale seems to accept this interpretation of the incomplete sentence. But even if Columbia's argument were based on a proper interpretation of this incomplete sentence, and even if we did not apply the canon of construing the policy in favor of the insured, we would still conclude it is possible that the liability of Prairie and Rockwell was ultimately caused, in part or in whole, by "your work," which according to the Columbia policy means TDH's work or operations performed by TDH or on its behalf, and materials, parts, and equipment in connection with such work or operations, and includes the failure to provide warnings or instructions.

supervise or inspect the construction site, failed to supervise or inspect the work of subcontractors, failed to warn Guzman of the opening, failed to provide adequate illumination, failed to supervise the HVAC work of its employees including Guzman, failed to enforce its own safety rules, and failed to provide adequate safeguards to prevent the injury. The district court observed that the third-party complaints "certainly raise the possibility that TDH will be held liable for Guzman's injuries based on its own negligence—a possibility also contemplated by the underlying complaint itself."[3]

Columbia asks us to ignore the third-party complaints, arguing a court "may consider evidence beyond the underlying complaint only if such evidence does not tend to determine an issue critical to the underlying lawsuit." (Appellant's Br. at 13.) Columbia only cites one case for this proposition—*Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831 (Ill. App. Ct. 2017)— and does not provide a pinpoint, probably because *Centex Homes* does not support that proposition.

*Centex Homes* merely recognized that the Illinois Appellate Court in *CSR Roofing Contractors* expressly declined to determine the applicability of Section 414 of the Restatement (Second) of Torts because it "may tend to determine an issue crucial to the determination of the underlying lawsuit." *Centex Homes*, 72 N.E.3d at 844 (quoting *Pekin Ins. Co. v. CSR Roofing Contractors*, 41 N.E.3d 559, 573 (Ill. App. Ct. 2015)). And *Centex Homes* merely agreed that "the coverage determination must

---

[3] The district court referenced three third-party complaints filed by different defendants in the underlying suit, not including Prairie or Rockwell. We reviewed these third-party complaints. Columbia advanced no argument in its initial appellate brief that any party amended any of these third-party complaints in any relevant way.

be made without deciding any significant issues in the underlying case." *Centex Homes*, 72 N.E.3d at 845. Deciding a significant issue in the underlying case is not necessarily the same as considering a third-party complaint to determine whether there is a duty to defend.

*Centex Homes* did not forbid consideration of third-party complaints or other documents in determining whether there is a duty to defend. Quite the contrary, *Centex Homes* expressly noted that "[i]n certain circumstances, the court may look beyond the underlying complaint in order to determine whether an insurer has a duty to defend." *Id.* at 839.

Indeed, Scottsdale's appellate response claims Columbia recognizes a court may consider evidence beyond the underlying complaint to determine whether an insurer has a duty to defend, and Scottsdale cites *Centex Homes*, 72 N.E.3d at 839. Scottsdale then cites numerous other Illinois cases endorsing consideration of third-party complaints in this context. Scottsdale notes that Columbia fails to articulate a reason why the rule that a coverage determination must be made without deciding any issue crucial to the underlying case would preclude consideration of the third-party complaints here.

In reply, Columbia abandons any argument that we are forbidden from considering the third-party complaints by the rule against determining an issue critical to the underlying lawsuit, and instead advances other arguments for why we should ignore the third-party complaints. Columbia did not raise these arguments in its initial brief, so they are forfeited. *Webster v. CDI Indiana, LLC*, 917 F.3d 574, 578 (7th Cir. 2019);

*Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019). But these new arguments would not have prevailed anyway.[4]

Consideration here of the third-party complaints is not tantamount to determining any issue crucial to the determination of the underlying suit. We find no error in considering the third-party complaints.

They show TDH might have been at fault. But even without considering them, we would still conclude that the underlying suit suggests and does not foreclose satisfaction of the "arising out of" condition, and therefore the possibility of coverage, so Columbia owes a duty to defend Prairie and Rockwell.

As *Centex Homes* explicitly recognized, in this type of case, workers' compensation exclusivity is often at play, and that is

---

[4] First, Columbia attempts to discount the various third-party claims against TDH as "kitchen sink" claims, mere attempts to spread liability against any available party. But that argument does not undermine the potential merits of the third-party claims against TDH. And besides, we are not deciding whether these claims are meritorious but merely whether they indicate a potential that TDH might be partially at fault. They do, regardless of whether other parties also might be potentially liable. Second, Columbia argues that one of the third-party claimants against TDH has been dismissed from the underlying case so its third-party claim is moot. But this mootness does not affect our analysis, and does nothing to undermine the other third-party complaints against TDH. Third, Columbia argues that the particular allegations of another third-party claimant against TDH do not implicate the Columbia policy. We simply disagree. Fourth, Columbia argues that yet another third-party claimant shares an owner with Prairie and Rockwell, so its third-party complaint against TDH should be considered "self-serving," and ignored. But even if we ignore this third-party complaint, we still have the other third-party claims to consider. Besides, even if we ignored all the third-party complaints, we would still reach the same conclusion based on the underlying complaint.

why the injured employee does not sue his employer. But that does not preclude coverage of additional insureds on the employer's insurance policy.

### *3. National Fire*

Columbia argues *National Fire* sheds light on this case. There, the Illinois Appellate Court affirmed the lower court's declaratory judgment that National Fire had no duty to defend proposed insureds. *National Fire*, 909 N.E.2d at 293. The owner hired a general contractor to renovate property in Chicago. The general contractor subcontracted with a roofing company for a portion of the project. As part of this agreement, the owner and general contractor were named additional insureds on the subcontractor's commercial general liability policy with National Fire, subject to this limitation:

> "That person or organization is an additional insured solely for liability due to [subcontractor's] negligence and specifically resulting from 'your work' for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured."

*Id.* at 286.

An employee of the subcontractor suffered injuries while working on the roof. He sued the general contractor and the owner. He alleged an employee of the general contractor moved part of the roof's support, causing him to fall. The underlying complaint included no allegations expressly against the subcontractor/employer. The owner and general contractor argued, however, that because the underlying complaint

alleged the victim was not provided with a safe place to work, any breach of this duty would belong to the subcontractor also, so the "sole negligence" exclusion did not apply. The appellate court rejected this argument, exposing it as a claim that *any* injury of a subcontractor's employee on the jobsite triggers the subcontractor's insurer's duty to defend other parties because it necessarily follows that the subcontractor must have failed to provide a safe workplace for its employee. This, according to the court, would render the additional-insured limitation meaningless. The court concluded that "[m]ore than some unspecified breach of the subcontractor's duty to provide a safe work place is required to support a claim that the negligence complaint implicates negligence on the part of the subcontractor, too." *Id.* at 291. The court determined no allegation in the underlying complaint suggested potential liability on the part of the subcontractor sufficient to trigger National Fire's duty to defend.

But could the third-party complaint in the underlying action show some potential for negligence by the subcontractor such that the "sole negligence of the additional insured" limitation did not bar coverage? The appellate court affirmed the lower court's decision not to consider the third-party complaint. The appellate court recognized a "long line of cases" allowing extrinsic evidence to inform the duty-to-defend determination. *Id.* at 292. But the court rejected consideration of the particular third-party complaint at issue because it was filed by the general contractor, one of the very parties seeking coverage. That is, after National Fire brought its declaratory judgment action, the general contractor—seeking coverage from National Fire—filed a third-party complaint in the underlying action. The subcontractor essentially sought to

bolster its claim of coverage by referencing its own third-party complaint. The court rejected this.

We agree with the district court that *National Fire* is distinguishable. First, the two insurance policies have different relevant language.

Second, the two underlying complaints have different factual allegations. The underlying complaint here does not merely suggest TDH might have breached a duty to provide a safe work place in the manner of *res ipsa loquitur*. Rather, the underlying complaint suggests Prairie and Rockwell are liable because they failed to supervise, inspect, monitor, and co-ordinate the work of the subcontractors to prevent the fall through the unprotected opening, and because they allowed their subcontractors to engage in the unsafe practice of not covering or guarding the unmarked opening.

Third, at least two of the three third-party complaints the district court considered here were not filed by proposed additional insureds or related entities. We "need not wear judicial blinders," *American Economy Insurance Co. v. Holabird & Root*, 886 N.E.2d 1166, 1179 (Ill. App. Ct. 2008), and we can consider them. They make it even clearer that TDH might have been at fault.

So *National Fire* does not help Columbia.

### III. Conclusion

This case turns on whether Prairie's and Rockwell's liability in the underlying suit might partially *arise out of* TDH's operations performed for Prairie and Rockwell, because the Columbia policy says: "Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured." The

answer, based on the underlying complaint and the third-party complaints, is yes.

An insurer must defend its proposed insureds in an action that is potentially within coverage. The underlying allegations do not preclude the possibility of coverage. It is not clear or free from doubt that the policy's exclusion prevents coverage. Therefore, Columbia owes a duty to defend Prairie and Rockwell. As the district court correctly concluded, the issue of indemnity can wait.

We affirm.