2025 IL App (1st) 242052-U

No. 1-24-2052

Order filed December 3, 2025

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| TBR CONSTRUCTION, LLC; UTICA MUTUAL | ) | No. 2022 CH 8703 |
| INSURANCE COMPANY; and ANGEL HERNANDEZ, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | Honorable |
| (UTICA MUTUAL INSURANCE COMPANY | ) | Joel Chupack, |
| Defendant-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*:   On cross-motions for summary judgment, we find the trial court did not err in granting judgment in favor of Navigators Specialty Insurance Company (Navigators) and denying judgment in favor of Utica Mutual Insurance Company (Utica).

¶ 2   Navigators filed a declaratory action alleging that Utica had a duty to defend and indemnify its insured in an underlying negligence action between a general contractor and an injured

employee of a subcontractor. The parties filed cross-motions for summary judgment and the trial court granted judgment in favor of Navigators. For the reasons that follow, we affirm and remand the matter for further proceedings.[1]

¶ 3                                    I. BACKGROUND

¶ 4      In March 2017, Greenscape Homes, LLC (Greenscape), was acting as general contractor for a residential development being constructed in Downers Grove, Illinois. Greenscape hired TBR Construction, LLC (TBR), as a carpentry-framing subcontractor pursuant to a standard "Trade Contractor Agreement" (Trade Agreement).

¶ 5      Article 9 of the Trade Agreement required TBR to name Greenscape as "an additional insured at all locations at which [TBR] performs any work for [Greenscape]." TBR was insured under a commercial general liability insurance policy issued by Utica (Utica Policy). In addition, Greenscape was insured under its own commercial general liability insurance policy issued by Navigators (Navigators Policy).

¶ 6      On April 9, 2019, Angel Hernandez, a tradesman employed by TBR, was injured when a wooden truss fell on him while he was working at the Downers Grove site.

¶ 7      On January 14, 2020, Navigators sent correspondence to TBR advising that Hernandez had retained counsel but had not yet filed a lawsuit. Navigators requested TBR confirm its obligation to defend and indemnify Greenscape as an additional insured under the Utica Policy. TBR was asked to refer the matter to Utica, who was carbon copied on the correspondence. Over a year later, on February 12, 2021, Navigators sent a second correspondence to TBR, again requesting defense coverage and indemnity for Greenscape.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

¶ 8    In a letter dated March 4, 2021, Utica declined Navigators' tender of defense of Greenscape on the grounds that the Utica Policy excluded coverage for the "independent acts or omissions" of an additional insured. The letter added, "[t]here is no indemnification or defense owed as there are no claims resulting from a breach of any duty owed to Greenscape."

¶ 9    On March 22, 2021, Hernandez filed a one-count complaint against Greenscape in the circuit court of DuPage County, seeking to recover damages for the injuries he sustained in the construction accident. Greenscape tendered its defense and indemnity of the underlying lawsuit to Navigators, which accepted the tender and agreed to defend.

¶ 10    Navigators sent a letter to TBR on October 4, 2021, notifying TBR of the underlying lawsuit and again requesting that TBR confirm its obligation to defend and indemnify Greenscape as an additional insured. The letter was carbon copied to Utica. Two days later, in an email dated October 6, 2021, Utica again declined to accept tender, citing its March 4, 2021 letter.

¶ 11    On October 19, 2021, Greenscape filed a third-party complaint against TBR in the underlying lawsuit, asserting claims for contribution and breach of the Trade Agreement for failure to indemnify and procure insurance.

¶ 12    Navigators sent correspondence to Utica on March 25, 2022, requesting that it accept tender of the defense and indemnification of Greenscape as an additional insured. Utica denied the request by email that same day.

¶ 13    On September 1, 2022, Navigators filed a complaint for declaratory judgment in the circuit court of Cook County against TBR, Utica, and Hernandez. Among other things, Navigators alleged that Utica: breached its duty to defend and indemnify Greenscape as an additional insured in the underlying lawsuit, failed to file a declaratory judgment action to determine coverage, and was therefore estopped "from raising any defense to coverage in this or any other action related to the

3

underlying case." Navigators claimed it was "entitled to contribution for some or all of the costs [it] expended defending Greenscape for the underlying case." In addition, Navigators asserted that it was "contractually subrogated to Greenscape's rights against TBR and is entitled to reimbursement of the defense costs Navigators paid and will pay to defend Greenscape for the underlying case."

¶ 14 Utica filed an answer and counterclaim for declaratory judgment. In its counterclaim, Utica maintained that the underlying lawsuit did not "allege any facts indicating TBR's conduct caused or contributed to cause, in whole or in part, Angel Hernandez's injuries." Utica additionally claimed that no facts were alleged demonstrating that Greenscape was vicariously liable for TBR's acts or omissions. Utica further contended that Navigators and Greenscape failed to comply with, and breached, the notice provision in the Utica Policy by waiting seven months, until October 4, 2021, "before sending copies of the legal papers received in connection with the underlying lawsuit." Utica argued that it was "entitled to a judicial determination that it owes no duty to defend or indemnify Greenscape and no obligation to reimburse Navigators or contribute towards Greenscape's defense and/or indemnification in the underlying lawsuit."

¶ 15 Pursuant to an agreed order entered November 22, 2022, TBR was voluntarily dismissed, without prejudice, as a party defendant in the declaratory judgment action.

¶ 16 Navigators and Utica subsequently filed cross-motions for summary judgment, seeking a declaration as to whether Utica had a duty to defend and indemnify Greenscape. On June 24, 2024, the trial court issued an opinion and order granting summary judgment in favor of Navigators and denying Utica's cross-motion for summary judgment. The court entered a subsequent order on July 23, 2024, modifying its June order to reflect that "the issue of Utica's duty to indemnify Greenscape in the underlying action is premature given that the underlying action remains

4

pending."

¶ 17    On September 23, 2024, the trial court entered an order voluntarily dismissing, without prejudice, Navigators' claims against Utica for equitable subrogation and contribution. The court concluded that the orders of June 24, 2024, and July 23, 2024, were final and appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), and that there was no just reason to delay enforcement or appeal of the orders. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    In this appeal, Utica challenges the trial court's grant of summary judgment in favor of Navigators and the determination that Utica had a duty to defend Greenscape in the Hernandez action.

¶ 20    "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 13. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern*

*Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's decision on cross-motions for summary judgment *de novo*. *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st) 191680, ¶ 12.

¶ 21    "Construction of an insurance policy and a determination of the parties' rights under the policy are questions of law properly disposed of by way of summary judgment." *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 21. "An insurance policy is a contract, so the rules applicable to contract interpretation govern the interpretation of an insurance policy." *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 17. "A court's primary objective in construing a contract is to ascertain and give effect to the parties' intentions as expressed through the contract's language." *Nationwide Property & Casualty Insurance Co*, 2022 IL App (1st) 210267, ¶ 25. "When presented with clear and unambiguous language, the intent of the parties must be determined from the language of the contract itself and given its plain and ordinary meaning." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18.

¶ 22                            A. Duty to Defend

¶ 23    It is well established that in Illinois, an insurer's duty to defend its insured is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). "The threshold that an underlying complaint must meet to trigger a duty to defend is minimal." *Illinois Tool Works, Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 20.

¶ 24    To determine whether an insurer has a duty to defend its insured, "the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*,

156 Ill. 2d 384, 393 (1993). "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Outboard Marine Corp.*, 154 Ill. 2d at 125. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 393. "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991).

¶ 25    In support of its contention that it owed no duty to defend Greenscape as an additional insured, Utica relies on a provision in the Utica Policy that excludes coverage for the "independent acts or omissions of such additional insured." Utica argues that the additional insured endorsement was not triggered as Greenscape was sued for its independent acts and omissions, and therefore, there was no duty to defend. Utica claims that "there are no direct or indirect allegations that TBR was negligent in any manner." It maintains that "[a]bsent an allegation of an act or omission by TBR that caused 'in whole or in part' Hernandez's injuries for which Greenscape may be found liable, the underlying complaint does not potentially fall within the scope of additional coverage under the Utica [P]olicy."

¶ 26    "One fact that is common in almost all of these construction cases is that the Workers' Compensation Act [citation] gives tort immunity to the injured worker's direct employer, thereby barring the injured worker from bringing a personal injury complaint against his or her employer." *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 36. Therefore, "the allegations of the underlying complaint must be read with the understanding that the employer may be the

negligent actor even where the complaint does not include allegations against that employer." *Id*. In addition, "[w]hen an insurer relies on a provision that it contends excludes coverage, courts 'review the applicability of the provision to ensure it is clear and free from doubt that the policy's exclusion prevents coverage.' " *Scottsdale Insurance Co. v. Columbia Insurance Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (quoting *National Fire Ins. of Hartford v. Walsh Const. Co.*, 392 Ill. App. 3d 312, 330 (2009) (internal quotation marks omitted)).

¶ 27    Here, the "Businessowners Extension Endorsement" in the Utica Policy provides coverage for an additional insured to the extent that the insured is held liable for TBR's acts or omissions "arising out of" its ongoing operations. Our courts have held that the phrase "arising out of" is "both broad and vague" and therefore, must be liberally construed in favor of the insured. *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 178 (2008). Accordingly, courts have determined that "but for" causation, not necessarily proximate causation, satisfies this language. *Id*.

¶ 28    Thus, Utica's duty to defend Greenscape as an additional insured turns on whether Greenscape's potential liability in the underlying lawsuit "arises out" of TBR's ongoing operations on behalf of Greenscape. In other words, to establish the duty to defend, Greenscape need only demonstrate that "but for" Hernandez's work on behalf of TBR, he would not have been injured.

¶ 29    The facts reveal that Greenscape was the general contractor on the construction project and that TBR was hired as a subcontractor to perform carpentry-framing pursuant to their Trade Agreement. TBR named Greenscape as an additional insured under its policy for bodily injury arising out of TBR's ongoing operations. The underlying complaint alleged that Hernandez was injured while working as a tradesman for TBR. At the time Hernandez was injured, TBR was performing operations on the construction site pursuant to the Trade Agreement. "But for" TBR's

employment of Hernandez, he would not have been present on the construction site where he was injured. Therefore, Greenscape's potential liability to Hernandez may be a result of his work for TBR. This potentiality gave rise to a duty to defend Greenscape as an additional insured for claims arising out of TBR's ongoing operations.

¶ 30    Moreover, under the Trade Agreement, TBR was responsible for the safety and supervision of its own employees, including Hernandez. The underlying complaint alleged that Greenscape was negligent in failing to exercise reasonable care in its retained control over TBR's work. This allegation infers that Hernandez's injuries may have arisen out of TBR's supervision of Hernandez. See *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co.*, 2019 IL App (4th) 180411, ¶¶ 34-39 (for similar reasoning). This contradicts Utica's argument that "there are no direct or indirect allegations that TBR was negligent in any manner." It also calls into question Utica's argument that Greenscape was only sued for its independent acts and omissions.

¶ 31    Here, we cannot say that the applicability of the exclusion to the facts in the underlying complaint is free from doubt. The allegations in the underlying complaint inherently imply that TBR negligently supervised Hernandez, which brings the case potentially within the scope of coverage. Therefore, we find that Greenscape was entitled to a defense under the Utica Policy.

¶ 32                                      B. Late Notice

¶ 33    We must next determine whether Navigators' alleged late notice relieved Utica of its duty to defend Greenscape. In support of its argument, Utica focuses on the fact that the underlying lawsuit was filed on March 22, 2021, and that Greenscape waited until October 4, 2021, "to send the suit papers to Utica and notify it of the lawsuit."

¶ 34    The purpose of notice provisions in insurance policies is "to ensure that the insurer will be

able to timely investigate and defend claims against its insured." *Zurich Insurance Co. v. Walsh Construction Co. of Illinois, Inc.*, 352 Ill. App. 3d 504, 508 (2004). "Notice provisions in an insurance policy are not merely technical requirements but are conditions precedent to an insurer's contractual duties." *Farmers Automobile Insurance Association v. Burton*, 2012 IL App (4th) 110289, ¶ 16.

¶ 35    The notice provision in the Utica Policy provides that an insured must notify Utica "as soon as practicable" of any "occurrence" that may result in a claim or lawsuit. We find that Greenscape, through Navigators, did just that.

¶ 36    "A policy provision requiring notice 'as soon as practicable' means notice must be given 'within a reasonable time.' " *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185 (2010). Reasonableness depends "upon the facts and circumstances of a particular case." *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 581 (1985). "The test for the reasonableness of the notice given is 'whether any reasonably prudent person could foresee a lawsuit upon receipt of the first notice that would involve the insurer's policy.' " *Millers Mutual Insurance Association of Illinois v. Graham Oil Co.*, 282 Ill. App. 3d 129, 141 (1996) (quoting *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7 (1993)). "Where the facts are undisputed, the reasonableness of notice to an insurer is a question of law." *AAA Disposal Systems, Inc. v. Aetna Casualty & Surety Co.*, 355 Ill. App. 3d 275, 283 (2005).

¶ 37    Here, the record demonstrates that Utica was made aware of the subject "occurrence" in early 2020, when Navigators sent a pre-suit letter to TBR on January 14, 2020, describing the accident and requesting that TBR confirm its obligation to defend and indemnify Greenscape as an additional insured under the Utica Policy. Navigators advised TBR to immediately refer the

matter to Utica, who was carbon copied on the letter. Then, over a year later, on February 12, 2021, approximately a month before Hernandez filed his personal injury complaint, Navigators sent a follow-up letter to TBR requesting the same confirmation of obligation. These pre-suit notices were sufficient to make Utica aware that an accident occurred that could potentially trigger coverage under the terms of the Utica Policy.

¶ 38    To be sure, an insured's notice of a potential claim is not equivalent to actual notice of an underlying lawsuit. " 'Actual notice' means that the insurer knows both 'that a cause of action has been filed and that the complaint falls within or potentially within the scope of coverage of one of its policies.' " *Board of Managers of Roseglen Condominium Association v. Harleysville Lake States Insurance Co.*, 2022 IL App (1st) 210265, ¶ 68 (quoting *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 143 (1999)). Here, although the pre-suit notices did not provide Utica with actual notice of the underlying lawsuit, they nevertheless satisfied the underlying purpose of the notice provision by providing Utica with notice of the accident and the possibility of a lawsuit. Utica was afforded ample opportunity to timely investigate the cause of the accident and develop a defense to a potential lawsuit.

¶ 39    "[I]n determining whether an insured has failed to provide timely notice of an occurrence, the absence of prejudice to the insurer is a factor that may be considered." *Household International, Inc. v. Liberty Mutual Insurance Co.*, 321 Ill. App. 3d 859, 869 (2001). We find an absence of prejudice to Utica attributable to the alleged seven-month delay in receiving notice of the underlying lawsuit; the insurer does not indicate what, if anything, it would have done differently if there had been no delay. Utica has not shown how the alleged delay deprived it of a meaningful opportunity to investigate the accident.

¶ 40    The record demonstrates that Utica denied coverage before the underlying lawsuit was filed

and then persisted in that denial after it was filed. Therefore, it is reasonable to assume that any alleged delay in receiving notice of the underlying lawsuit had no effect on Utica's decision to deny coverage. In cases such as this, where the insurer prematurely denies coverage before the lawsuit is filed, this court has found that the insured is relieved of its obligation to give the insurer timely notice of the lawsuit. See, *e.g.*, *Pope v. Economy Fire & Casualty Co.*, 335 Ill. App. 3d 41, 47-48 (2002) (insured relieved of its obligation to provide notice of underlying lawsuit where insurer prematurely denied coverage before being served with the underlying lawsuit); *Davis v. United Fire & Casualty Co.*, 81 Ill. App. 3d 220, 225 (1980) ("[w]here *** an insured gives notice of an accident and receives from his insurer a flat denial of coverage, an insured will not be penalized for his failure to pursue the matter further with his insurer.")

¶ 41    In sum, we find that any alleged delay in Utica receiving notice of the underlying lawsuit was not unreasonable and therefore Utica was not relieved of its duty to defend Greenscape as an additional insured.

¶ 42                                III. CONCLUSION

¶ 43    Accordingly, for the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Navigators with respect to Utica's duty to defend Greenscape as an additional insured. We remand the matter to the trial court for further proceedings consistent with this order.

¶ 44    Affirmed and remanded for further proceedings.