# Illinois Official Reports

## Appellate Court

---

### *Amico v. Allstate Corp.*, 2020 IL App (1st) 191421

---

| | |
|---|---|
| Appellate Court Caption | PETER AMICO, Plaintiff-Appellant, v. ALLSTATE CORPORATION, a Delaware Corporation, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>No. 1-19-1421 |
| Filed | May 29, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-CH-05638; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Christopher M. Norem and Cole H. Munvez, Law Offices of Parente & Norem, P.C., of Chicago, for appellant.<br><br>Jonathan W. Goken and Thomas M. Wolf, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Peter Amico, appeals the dismissal of his declaratory judgment complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). On appeal, plaintiff contends that the circuit court erred in dismissing his complaint where the language of defendant Allstate Corporation's (Allstate) policy did not allow for a set-off or damages payable reduction in its underinsured motor vehicle coverage. For the following reasons, we affirm.

## I. JURISDICTION

¶ 3    The trial court granted Allstate's motion to dismiss on June 10, 2019. Plaintiff filed a notice of appeal on July 8, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

## II. BACKGROUND

¶ 5    On June 21, 2012, plaintiff sustained injuries in an automobile accident involving an underinsured motorist. Plaintiff settled with the owner of the underinsured vehicle for $100,000, the full limits of the owner's liability policy. He also received $143,078 in workers' compensation benefits as a result of a claim he filed due to the accident.

¶ 6    At the time, plaintiff possessed an automobile insurance policy issued by Allstate. The policy provided $500,000 of uninsured motorist coverage. The policy stated that Allstate "will pay those damages an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of: 1. Bodily injury sustained by an insured person ***." The policy also stated that

"[a]n uninsured auto is *** [a]n underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts required for bodily injury or property damage liability in the Illinois Safety Responsibility Law, but less than the applicable limit of liability for Coverage SS as shown on your Policy Declarations."

The policy included the following amendatory endorsement:

"Limits of Liability.

The coverage limit shown on the Policy Declarations for:

1. 'each person' is the maximum we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.

* * *

The Uninsured Motorists Coverage limits apply to each insured motor vehicle as shown on the Policy Declarations. This means the insuring of more than one person or auto under this or other auto policies will not increase our uninsured motorists limit of liability beyond the amount shown for any one auto, even though a separate premium is charged for each auto.

Damages payable will be reduced by:

1. all amounts paid by or on behalf of the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury or property damage liability coverage of this or any other auto insurance policy.

2. all amounts payable under any workers' compensation law, or similar law, Automobile Medical Payments, or any similar automobile medical payments coverage.

3. all amounts paid under Part 6 of this policy providing coverage for property damage.

If the accident involves the use of an underinsured motor vehicle, the limits for this coverage will be reduced by:

1. all amounts paid by or on behalf of the owner or operator of the underinsured auto or anyone else responsible. This includes all sums paid under the bodily injury or property damage liability coverage of this or any other auto insurance policy.

2. all amounts payable under any workers' compensation law, or similar law, or under any automobile medical payments coverage provided by this policy, or similar automobile medical payments coverage.

3. all amounts paid under Part 6 of this policy providing coverage for property damage.

If the accident involves the use of an underinsured motor vehicle, the limits for this coverage will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle, including partial payments made by an insolvent insurer."

¶ 7    Plaintiff filed a claim for the "full benefits" owed under the uninsured motorist provision of the Allstate policy. The parties agreed to a binding arbitration proceeding. In the arbitration contract, plaintiff and Allstate agreed that the maximum available coverage that plaintiff could collect in arbitration was $256,922. However, the parties did not agree on whether Allstate was entitled to any set-off or reduction of damages payable, given plaintiff's settlement with the other driver and his receipt of workers' compensation benefits. The parties also agreed that, if necessary, this issue would be brought before the circuit court.

¶ 8    On October 4, 2018, the arbitrator awarded plaintiff $306,067.72 in damages. Allstate subsequently issued plaintiff a check in the amount of $62,989.72, representing the difference between the arbitration award and payments plaintiff recovered from the settlement and his workers' compensation benefits. Plaintiff filed a complaint for declaratory judgment in circuit court, alleging that Allstate's underinsured motorist provision did not allow for a set-off or a reduction in damages payable in this situation. He asserted that he was entitled to $193,932.28, the difference between Allstate's $62,989.72 payment and the maximum amount available under the policy. Allstate filed a section 2-615 motion to dismiss, arguing that the policy's unambiguous language allowed for certain set-offs and that public policy prevented plaintiff from receiving additional recovery when he was fully compensated for his injuries. The trial court granted Allstate's motion and dismissed plaintiff's complaint. Plaintiff filed this timely appeal.

¶ 9                                      III. ANALYSIS

¶ 10        A section 2-615 motion to dismiss challenges the sufficiency of plaintiff's complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004). In reviewing a section 2-615 motion to dismiss, this court views the allegations in the light most favorable to plaintiff and accepts as true all well-pleaded facts and reasonable inferences drawn therefrom. *Id.* at 441. Dismissal pursuant to section 2-615 is proper if it is clear that no set of facts can be proved that would entitle plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We review the dismissal of plaintiff's complaint pursuant to section 2-615 *de novo*. *Young*, 213 Ill. 2d at 440.

¶ 11        At issue here is the interpretation of Allstate's damages payable provision for uninsured motor vehicles. An insurance policy is a contract, and the rules governing the interpretation of contracts apply to the interpretation of insurance policies. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416 (2006). Our primary function in interpreting an insurance contract is to ascertain and give effect to the intent of the parties, as expressed in the policy's language. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). We construe the insurance policy as a whole, taking into account the type of insurance provided and the nature of the risks involved. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007). If the language is unambiguous, we apply the provision as written unless it contravenes public policy. *Nicor*, 223 Ill. 2d at 416-17. If a provision is ambiguous, courts will strictly construe it against the insurer who drafted the policy. *Id.*

¶ 12        Allstate's policy provides that, when an accident involves an uninsured motor vehicle, damages payable will be reduced by "all amounts paid by or on behalf of the owner or operator of the uninsured auto or anyone else responsible," including all sums paid under "this or any other auto insurance policy." It provides that damages payable will also be reduced by "all amounts payable under any workers' compensation law." The policy explicitly includes underinsured motor vehicles in its definition of uninsured motor vehicles. There is no ambiguity on whether the damages payable provision also applies to underinsured motor vehicles.

¶ 13        Plaintiff, however, contends that the damages payable provision for uninsured motor vehicles does not apply to underinsured motor vehicles. Immediately following the damages payable provision, Allstate's policy provides that, "[i]f the accident involves the use of an underinsured [automobile], the *limits for this coverage* will be reduced by *** all amounts paid by or on behalf of the owner or operator of the underinsured auto or anyone else responsible," as well as workers' compensation payments. (Emphasis added.) According to plaintiff, only the policy's limits of coverage, not the amount of damages payable, may be reduced for underinsured motor vehicle claims.

¶ 14        If we accept plaintiff's interpretation that the damages payable provision does not apply to underinsured motor vehicles, what do we make of language in the policy that states "[a]n uninsured auto *** is an underinsured motor vehicle?" We cannot, as plaintiff suggests, view this language as "legally insignificant." Courts must construe the policy as a whole and not interpret it in a manner that renders provisions of the policy meaningless. *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, ¶ 83. Rather, policy provisions should be read in light of other relevant provisions to ascertain the parties' intent. *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775, 789 (2010). Following these

- 4 -

principles of interpretation, we construe both provisions to apply to underinsured motor vehicles.

¶ 15 The limit of coverage for an underinsured motor vehicle refers to the maximum amount an insurer must pay under the policy. *Banes v. Western States Insurance Co.*, 247 Ill. App. 3d 480, 485 (1993). The Illinois Insurance Code provides that "[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." 215 ILCS 5/143a-2(4) (West 2016). Thus, although the maximum amount Allstate must pay under plaintiff's policy is $500,000, Allstate is liable for only that portion of the $500,000 plaintiff did not recover from third parties. See *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 556 (1992). Entering arbitration, plaintiff and Allstate agreed that the maximum amount of Allstate's liability under the policy was $256,922, which represented the sum after subtracting $243,078 in other payments from the coverage limit.

¶ 16 Allstate's coverage limit for underinsured motor vehicles does not address the amount of actual damages Allstate must pay to plaintiff for a covered accident. The damages payable provision for uninsured motor vehicles provides the answer. This provision states that damages payable for an uninsured motor vehicle claim will be reduced by all sums paid under "this or any other auto insurance policy," as well as by "all amounts payable under any workers' compensation law." Since an underinsured motor vehicle is an uninsured motor vehicle under Allstate's policy, the damages payable provision also applies to underinsured motor vehicles. See *Allstate Insurance Co. v. Gonzalez-Loya*, 226 Ill. App. 3d 446, 449, 451 (1992) (interpreting identical language in a policy that " '[a]n uninsured auto is *** [a]n underinsured motor vehicle' " to mean that " 'uninsured always includes 'underinsured' "). Accordingly, after subtracting $100,000 plaintiff received from the underinsured motorist's policy and $143,078 he received in workers' compensation benefits, Allstate issued a check to plaintiff for $62,989.72, so that he received $306,067.72 in total compensation.

¶ 17 Plaintiff, however, argues that Allstate should have paid him its maximum liability of $256,922, which, combined with other payments he received, equals the $500,000 limit of coverage he paid for. We disagree. The underlying purpose of underinsured motorist coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." *Sulser*, 147 Ill. 2d at 555. If the other motorist had adequate insurance, plaintiff would have received $306,067.72, the amount of his damages award. Allstate's payment of $62,989.72, combined with other payments plaintiff received, resulted in compensation for that amount.

¶ 18 Furthermore, plaintiff's arbitration award was less than the $500,000 coverage limit. As a $500,000 policyholder, plaintiff is not assured of receiving $500,000 for every incident involving an underinsured motor vehicle. The legislature only intended for underinsured motorist coverage to take care of the difference between a claim and the amount available from the underinsured motorist, and " 'there would not be any excessive claim that could be made.' " *Id.* at 556 (quoting 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45 (statements of Representative Telcser)). To require Allstate to pay an amount that would result in plaintiff receiving $500,000 in total compensation, when he was awarded damages of $306,067.72, would be contrary to the legislative purpose behind providing underinsured motorist coverage.

¶ 19    Pursuant to its policy, Allstate paid plaintiff $62,989.72, which filled the gap between his arbitration award and the amounts he received from the underinsured motorist and his workers' compensation payments. See *id.* Since no set of facts can be proved that would entitle plaintiff to a recovery, the trial court properly granted Allstate's section 2-615 motion to dismiss plaintiff's declaratory judgment action.

¶ 20                                    IV. CONCLUSION

¶ 21    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 22    Affirmed.