2022 IL App (1st) 210293-U

FIFTH DIVISION
August 5, 2022

No. 1-21-0293

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee and Cross Appellant, | ) ) | |
| v. | ) ) | Case No. 2017 CH 08905 |
| DURKIN ELECTRIC COMPANY, INC., COMMONWEALTH EDISON COMPANY, GEORGE MOYETT, and PAOLA VARGAS | ) ) ) ) | Honorable Raymond W. Mitchell, Judge, Presiding. |
| Defendants | ) ) | |
| (Durkin Electric Company, Inc. Defendant-Appellant and Cross-Appellee). | ) ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1       *Held:*   The circuit court's order that denied plaintiff's motion for partial summary judgment and found that defendant was an additional insured under the policy was proper. The circuit court's order that denied defendant's motion for summary and found that plaintiff did not have a duty to defend or indemnify defendant under the policy was proper; affirmed.

¶ 2       This appeal involves a declaratory judgment action between appellant/cross-appellee,

Durkin Electric Company (Durkin), and appellee/cross-appellant, Country Mutual Insurance

Company (Country) related to insurance coverage in an underlying personal injury action filed against Durkin. Durkin tendered defense and indemnity of the underlying action to Country. Thereafter, Country filed a complaint for a declaratory judgment against Durkin, in which it requested the court declare that Durkin was not an additional insured, and that Country did not have an obligation to defend Durkin under the insurance policy between Country and B3 Integrated Solutions (B3), who was Moyett's employer. Durkin now appeals from the circuit court's order that denied its motion for summary judgment on Country's complaint for declaratory judgment and found that Country did not have a duty to defend or indemnify Durkin in the underlying case. In Country's cross-appeal, it appeals the circuit court's order that denied its motion for partial summary judgment and found that Durkin was an additional insured under the policy at issue. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                  Underlying Case

¶ 5        In the underlying case, in early 2017, plaintiffs George Moyett and Paola Vargas filed a complaint against Durkin, Commonwealth Edison Company (ComEd), Mid City Nissan, Inc. d/b/a Berman Nissan of Chicago, Inc. (Mid City), and Tribus Services, Inc f/k/a Corix Utility Services. Plaintiffs subsequently filed amended complaints, and in their fourth amended complaint they alleged claims for negligence and loss of consortium on behalf of Moyett's wife, Vargas, against each defendant. They alleged that Mid City owned and operated property at 3456 North Kedzie Avenue in Chicago and that ComEd supplied, operated, and owned the mechanical and electrical equipment on the property. ComEd contracted with Durkin to provide services for the electrical equipment located at the property. On April 5, 2017, ComEd's mechanical and electrical equipment malfunctioned or was defective. The equipment caught fire and injured

Moyett. As for the negligence claim against Durkin, plaintiffs alleged that Durkin breached its duty and was negligent because it failed to maintain the mechanical and/or electrical equipment, supplied defective mechanical and/or electrical equipment, and failed to warn Moyett of the dangerous and/or defective condition posed by the equipment. As a result, Moyett sustained permanent and severe injuries.

¶ 6        In November 2017, Durkin filed a third-party complaint against B3 in the underlying case. It alleged that B3 was Moyett's employer and he sustained injuries while performing job related duties for B3. B3 had a duty to exercise ordinary care and prevent and avoid injuries and Moyett's alleged injuries were due to B3's failure to exercise ordinary care. Moyett's injuries were caused, in whole or in part, by B3's failure to, *inter alia*, provide equipment to Moyett, train Moyett, provide a safe workplace, supervise Moyett, and provide adequate safeguards to prevent him from injury while working.

¶ 7        In February 2018, ComEd filed a third party complaint for contribution in the underlying case against B3. It alleged as follows. B3 was a subcontractor of Durkin, and Moyett was an employee or agent of B3. B3 was responsible for directing and supervising Moyett's work at the incident site and had a duty to exercise ordinary care for the safety of Moyett. If Moyett was injured, it was caused by B3's negligent acts or omissions, including failing to do the following: properly manage and supervise Moyett's work, properly instruct him, provide proper equipment and a safe workplace, maintain the mechanical and electrical equipment, warn Moyett of the dangerous and defective condition posed by the equipment, instruct its employees on proper safety measures, provide Moyett with sufficient training on work site safety, and properly train and instruct him. ComEd alleged that if Moyett was injured, his injuries incurred as a direct and proximate result of B3's negligent acts or omissions.

¶ 8	In April 2019, Tribus filed a third-party complaint against B3 in the underlying case. It alleged that Moyett was acting within his scope of employment with B3. Any injuries or damages were caused by B3's negligent acts or omissions.

¶ 9	Complaint for Declaratory Judgment

¶ 10	In June 2017, Country filed a complaint for declaratory judgment against Durkin, ComEd, Moyett, and Vargas, and then in August 2017 and December 2017, it subsequently filed amended and second amended complaints that contained similar allegations. Country alleged that on February 5, 2017, Country and B3 entered into a contract for commercial general liability insurance (policy). Durkin and ComEd both tendered their defense in the underlying case to Country and each asserted that it was an additional insured under the policy pursuant to a certificate of insurance and a contract that Durkin had with B3.

¶ 11	Country alleged that Durkin did not qualify as an additional insured under the policy because the certificate of insurance was issued on April 5, 2017, which was after the incident had occurred. Country alleged that ComEd was never added as a potential additional insured under the policy. Country also alleged that even if Durkin had been added as an additional insured to the policy before the incident, the policy did not provide coverage for Durkin for the underlying case because its coverage was limited to "where the liability of [Durkin] is caused, in whole or in part, by the acts or omissions of B3." B3 was not mentioned in the underlying case and did not have a role in creating or maintaining the alleged defective mechanical and electrical equipment as alleged by Moyett in the underlying case. Country requested the court declare that Durkin and ComEd were not additional insureds under the policy and that Country did not have an obligation to defend Durkin and ComEd in the underlying case.

¶ 12 Country attached to the complaint for declaratory judgment a document entitled "Agreement between Contractor and Subcontractor," which provided that on October 6, 2015, Durkin, the contractor, and B3, the subcontractor, entered into an agreement whereby B3 would purchase and maintain, among other things, commercial general liability insurance. It stated that the policy must include an endorsement identifying Durkin as an additional insured.

¶ 13                                    Country Mutual Policy

¶ 14 To Country's complaint for declaratory judgment, it also attached the policy between B3 and Country, which provided that B3 was the named insured, and the policy period was between October 22, 2016, and October 22, 2017.

¶ 15 In Section II of the policy, under the "Coverages" section, it states that the insurance applies to "bodily injury" and "property damage" only if "(b) The 'bodily injury' or 'property damage' occurs during the policy period." It also provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies" and "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages."

¶ 16 The policy contains an endorsement entitled "Additional Insured-Multiple Interests." It states, in relevant part, as follows.

> **"Name of Person or Organization:**
>
> **An entity listed as an additional insured on a certificate of insurance issued and approved by us during this policy period.**
>
> **A. Who is an Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to liability arising

out of your operations or premises owned, leased, or rented by you, subject to the following.

If the person(s) or organization(s) shown in the Schedule:

\*\*\*

10. **Is a person or organization for whom you are performing operations and with whom you have agreed in a written contract or agreement that such person or organization be included as an additional insured on your policy**, this insurance is limited to its liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

    **a.** Your acts or omissions; or

    **b.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations performed for that insured. A person's or organization's status as an insured under this paragraph ends when your operations for that insured are completed or the contractor's agreement is terminated."

(Emphasis in original.)

¶ 17    The policy contains another endorsement entitled "Additional Insured-Owners, Lessees, or Contractors – Scheduled Person or Organization." Under the header "Name of Additional Insured Person(s) or Organization(s)," it states: "An entity listed as an additional insured on a Certificate of insurance issued and approved by us during this policy period." It also states as follows:

"**Section II - Liability** is amended as follows:

**A**. The following is added to Paragraph C. **Who Is An Insured:**

**3**. Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

**a.** Your acts or omissions; or

**b.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above."

Country also attached to its complaint for declaratory judgment a document entitled "Certificate of Liability Insurance" between B3 and Country, which is dated April 5, 2017, and listed Durkin as an "additional insured." The certificate provided that the policy period was October 22, 2016, to October 22, 2017.

¶ 18                          Country's Motion for Partial for Summary Judgment

¶ 19        Country filed a motion for partial summary judgment, in which it argued that the court should grant summary judgment in its favor because it did not have a duty to defend Durkin under the policy. It contended that Durkin was not identified as an additional insured on the policy until after the accident occurred and that, therefore, Durkin was not covered under the policy. Country asserted that Durkin was identified as an additional insured on the certificate of insurance at 11:42 a.m., on April 5, 2017, which was about one hour after the accident had occurred. Country argued that Durkin could not rely upon the certificate of insurance issued after the accident to demonstrate that it was an additional insured under the Country policy.

¶ 20        To support its argument that the certificate of insurance was issued after the accident, Country asserted that the accident occurred at about 10:51:38 a.m. on April 5, 2017, and that at 11:30 a.m. that day, Country's agent, Troy Vidovic, received a telephone call from a B3 employee,

who requested that Country issue an insurance certificate naming Durkin as a "certificate holder" and "additional insured." To support the assertion, Country attached an affidavit by Vidovic, in which he averred that B3 had a businessowner's liability insurance coverage policy with Country for a policy period of October 22, 2016, to October 22, 2017. At about 11:30 a.m. on April 5, 2017, a B3 employee informed Vidovic of the accident and requested that Durkin be added to the policy as an additional insured. At 11:42 a.m. on April 5, 2017, Vidovic added Durkin to the policy as a certificate holder and an additional insured. No other certificate of insurance naming Durkin as a certificate holder or additional insured was issued or requested under the policy during the policy period. Country also attached to its motion for partial summary judgment the discovery deposition of Daniel Durkin, the general superintendent of Durkin, who testified that he received the certificate via email from B3's employee at 11:48 a.m. on April 5, 2017.

¶ 21    In response to Country's motion for partial summary judgment, Durkin stated that Country's policy with B3 named as an additional insured any entity whom B3 agreed to name as an additional insured and for whom Country issued a certificate of insurance during the relevant policy period. Durkin asserted that B3 entered a written agreement with Durkin to name Durkin as an additional insured under the policy and that Country issued a certificate of insurance naming Durkin as an additional insured for the policy period of October 22, 2016, to October 22, 2017. Durkin argued that coverage should not be invalidated because a certificate of insurance was issued after the alleged underlying occurrence.

¶ 22    Circuit Court's Order on Country's Motion for Partial Summary Judgment

¶ 23    On June 24, 2019, the circuit court issued a written order that denied Country's motion for partial summary judgment, finding that the issuance of the certificate of insurance after Moyett's accident did not preclude Durkin's qualification as an additional insured. In doing so, the

court stated the policy required that the additional insured is a "person or organization for whom you are performing operations and with who you have agreed in a written contract or agreement that such person or organization be included as an additional insured on your policy." B3 agreed to provide insurance to Durkin under the parties' subcontract. The court also stated that the policy provided additional insured coverage to " 'an entity listed as an additional insured on a certificate of insurance issued and approved by us during this policy period.' " The court noted that the "certificate of insurance issued indicates 'it confers no rights on the certificate holder' and 'does not affirmatively or negatively amend, extend, or alter coverage afforded by the policies below.' " The court concluded that "[t]he proposition that the issuance of a certificate of insurance may disclaim the conferral of coverage rights, yet simultaneously proscribe the effective dates of coverage under the policy is incongruous."

¶ 24                          Country's Motion to Reconsider the June 24, 2019, Order

¶ 25      Country filed a motion to reconsider the court's June 24, 2019, order, in which it argued that the court erred when it concluded that the issuance of a certificate of insurance by Country after Moyett's injuries had already occurred did not preclude Durkin from being an additional insured. Country also argued that the court did not rule on its fortuity argument that an insured who acquires insurance after a known loss should not be entitled to insurance coverage.

¶ 26      Circuit Court's Order on Country's Motion to Reconsider the June 24, 2019, Order

¶ 27      In the circuit court's December 6, 2019, written order, it denied Country's motion to reconsider. The court stated that "as long as the policy of insurance evidenced an intent to include an entity as an additional insured, the fact that a certificate of insurance issued *after* the loss does not defeat a party's status as an additional insured." (Emphasis in original.) The court stated that "[t]his conclusion is consistent with the language of the policy which describes an additional

insured as an 'entity listed as an additional insured on a certificate of insurance and approved by us *during this policy period.*' " (Emphasis in original.) The court concluded:

> "It is hornbook law that the policy controls coverage and that a certificate of insurance is merely evidence of insurance. 3 *Couch on Insurance* 3d § 40:31. When the certificate provides that it is evidencing coverage for the entire policy period, the date that the certificate was issued is immaterial so long as it was issued within the policy period. The 'effective date' on the certificate is merely its issuance date; it is *not* the effective date of the policy of insurance."

¶ 28                    Durkin's Motion for Summary Judgment

¶ 29    In January 2020, Durkin filed a motion for summary judgment, asserting that Country must defend and indemnify Durkin in the underlying case. It stated that the court had already determined that Durkin was an additional insured under the policy. Durkin stated that to deny coverage, Country relied on the language of the policy that stated that additional-insured coverage is limited to claims "with respect to liability for 'bodily injury'***caused in whole or in part, by: a. Your acts or omissions; or b. The acts or omission of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s)." Durkin claimed that Moyett pled multiple theories "under which Durkin's liability would be based in part on B3's acts or in which B3's alleged actions would be a part of the cause of Moyett's alleged bodily injury when considered in light of ComEd's third-party complaint."

¶ 30    Durkin asserted that in the underlying case, Moyett's allegations implied that he was injured while working with B3 and that to determine whether there is a duty to defend, the court must consider all relevant facts in the underlying pleadings, including third-party complaints. It stated that in ComEd's third-party complaint, ComEd pled multiple allegations against B3,

including that Moyett was working for B3 at all relevant times and that Moyett's alleged injuries were the direct and proximate result of B3's acts and omissions in that B3 failed to, among other things, supervise, oversee, instruct, and provide a safe workplace for Moyett. Durkin requested the court find that Moyett's underlying complaint and ComEd's third-party complaint pled allegations against B3 that were potentially covered under the policy such that Country must defend Durkin.

¶ 31    In response to Durkin's motion for summary judgment, Country argued that to establish coverage under the policy, Durkin must show that "its liability for the bodily injury to [Moyett] was caused, in whole or in part, by B3's acts or omissions," which it could not do based on Moyett's allegations in the underlying complaint. Country asserted that there was nothing in Moyett's complaint that referred to any negligent acts or omissions by B3.

¶ 32              Circuit Court's Ruling on Durkin's Motion for Summary Judgment

¶ 33    In the circuit court's May 13, 2020, written order, it denied Durkin's motion for summary judgment and found that Country did not have a duty to defend or indemnify Durkin in the underlying case. In doing so, the court stated that the policy provided that its additional insurance coverage was "limited to the additional insured's liability for bodily injury caused in whole or in part by: (1) B3 Integrated Solutions' acts or omissions or (2) the acts or omissions of those acting on B3 Integrated Solutions' behalf in the performance of B3 Integrated Solutions' ongoing operations performed for the insured." The court concluded that the underlying complaint failed to allege, or potentially allege, any facts suggesting that Moyett's injury was caused in whole or in part by B3's actions or omissions as required to trigger additional insurance coverage under the policy.

¶ 34     As for ComEd's third-party complaint against B3, the court noted that ComEd's third-party complaint undisputedly alleged that Moyett's injury was caused in whole or in part by B3 to fall within the policy. The court, however, concluded that it would not consider the third-party complaint, noting it was brought by a putative additional insured and filed after Country filed the declaratory judgment action seeking to exclude coverage. It stated that Durkin could not rely on ComEd's third-party complaint to support its coverage position, noting that both ComEd and Durkin were similarly situated putative additional insureds and their third-party complaints against B3 in the underlying case were almost identical. The court also noted that Durkin pointed to no other evidence or pleadings to support its position that Moyett's alleged injury was caused in whole or in part by B3.

¶ 35     The court also stated that section 10(b) of the policy "establishes coverage for an *additional insured's liability* for bodily injury caused in whole or in part by the acts or omissions of those acting on B3 Integrated Solutions' behalf." (Emphasis in original.) It noted that Durkin had argued that Moyett's own actions as an employee of B3 invoked Country's duty to defend under this section and that Durkin had cited its affirmative defense of contributory negligence alleged in the underlying case. It stated however that "section 10(b) conveys coverage *for an additional insured's liability* for bodily injury *caused in whole or in part* by the acts or omissions of those acting on B3 Integrated Solutions' behalf." (Emphasis in original.) It stated that "[t]he contributory negligence allegations, taken as true, do not constitute the cause, in whole or in part, of Durkin's alleged liability for Moyett's bodily injury."

¶ 36     Durkin's Motion to Reconsider the Circuit Court's May 20, 2020, Order

¶ 37     Durkin filed a motion to reconsider the court's May 20, 2020, order, in which it argued that the court misinterpreted section 10 of the policy when it stated that to establish

coverage, the policy required that Durkin's "liability be caused in whole or in part by B3's acts or omissions." Durkin asserted that the proper reading of the policy was that Durkin had "coverage when the alleged bodily injury was caused by B3's acts or the underlying plaintiff's acts," who was acting on B3's behalf. Durkin also contended that the court had found that the "caused by" language in the policy required that B3's actions be the sole proximate cause of Durkin's liability. It argued however that the "caused by" language only required a showing that "but for" the action, the bodily injury and the associated liability would not have happened. Durkin stated that "when an employee is working for his employer when he is injured, his actions are always on his employer's behalf and a 'but for' cause of his injury."

¶ 38     Durkin also argued that under Illinois law, the court should have considered the silence in the plaintiff's complaint regarding his employer's acts or omissions in context of the worker's compensation laws. As for ComEd's third party complaint in the underlying case, Durkin argued that the court should have reviewed the third-party complaint because it did not bolster Durkin's claim and was not a self-serving document used to create coverage.

¶ 39     Circuit Court's Order on Durkin's Motion to Reconsider the May 20, 2020, Order

¶ 40     In the circuit court's February 26, 2021, written order, it denied Durkin's motion to reconsider. In doing so, the court stated that "[t]he policy extends coverage only for bodily injury caused in whole or in part—by an act or omission—of B3 or those acting on its behalf" and "[o]n its face, this requires more than simply establishing the underlying plaintiff's employment with B3." The court stated that even if the underlying plaintiff was "acting on B3's behalf" when he incurred his injury, that was not enough to extend coverage, as the "policy limits the insurance to *Durkin's liability* for a bodily injury caused in whole or in part by the acts or omissions of those acting on B3's behalf." (Emphasis in original.) It stated that Durkin's reliance on certain acts or

omissions of the underlying plaintiff as a defense to its liability in the underlying litigation is insufficient to support coverage.

¶ 41    As for Durkin's argument that silence regarding B3's conduct in the underlying complaint should be construed as a result of immunity under workers' compensation laws, the court noted that burden was on the additional insured to establish coverage, as the policy involved limiting language in its coverage grant. The court stated that "[w]ithout any suggestion in the underlying complaint to support an act or omission of B3, Durkin's reliance on potential tort immunity is not compelling." The court also concluded that Durkin was precluded from relying on ComEd's third-party complaint to establish Country's duty to defend. It stated that the third-party complaint was filed after the declaratory judgment action was filed and was "brought by a similarly situated putative insured" and only "serve[d] to bolster Durkin's coverage position with additional facts entirely absent from the underlying complaint." This appeal followed.

¶ 42                              II. ANALYSIS

¶ 43    Initially, as previously discussed, the circuit court denied Country's motion for partial summary judgment and found that the issuance of the certificate of insurance after Moyett's accident did not preclude Durkin's qualification as an additional insured. In Country's cross-appeal, it argues that the circuit court erred when it found that Durkin was an additional insured under the policy. Country asserts that if we find that Durkin was not an additional insured under the policy then we need not address the issues raised by Durkin in its appeal from the circuit court's order that found that Country did not have a duty to defend under the policy. We will therefore address Country's cross-appeal first.

¶ 44                          Country's Cross-Appeal

¶ 45    Country argues that the circuit court erred when it denied its motion for summary judgment and concluded that Durkin was an additional insured under the policy. Country contends that the certificate of insurance, which would have conferred additional insured status on Durkin, was not issued until about one hour after the accident on April 5, 2017, and that, therefore, Durkin was not an additional insured under B3's policy. Country asserts that Durkin is precluded from coverage as an additional insured under the "known loss" doctrine because the certificate of insurance was issued after the incident.

¶ 46    "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp. v. Liberty Mutual Insurance Co*., 154 Ill. 2d 90, 102 (1992). A circuit court may properly grant summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Our review of a circuit court's ruling on a motion for summary judgment is *de novo*. *Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010). Further, "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois,* 326 Ill. App. 3d 874, 877 (2002).

¶ 47    "An insurance policy is a contract, and the rules governing the interpretation of contracts apply to the interpretation of insurance policies." *Amico v. Allstate Corp*., 2020 IL App (1st) 191421, ¶ 11. "The primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement." *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, ¶ 26. "If the terms

of a policy are clear and unambiguous, they must be given their plain and ordinary meaning." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). However, if the language of a policy is ambiguous, it will be strictly construed against the insurer who drafted the policy. *Amico*, 2020 IL App (1st) 191421, ¶ 11. Further, provisions that exclude or limit are construed liberally in favor of the insured and against the insurer. *Phusion Projects, Inc. v. Selective Insurance Co. of South Carolina,* 2015 IL App (1st) 150172, ¶ 47. It is the insured's burden to prove that a claim falls within the coverage of the policy. *Travelers Personal Insurance Co. v. Edwards*, 2016 IL App (1st) 141595, ¶ 22.

¶ 48        We find that under the clear and unambiguous language of the policy, Durkin was an additional insured during the policy period of October 22, 2016, to October 22, 2017. The record shows that B3, the subcontractor, and Durkin, the contractor, entered into an agreement on October 6, 2015, whereby the parties agreed that B3 would purchase, among other things, commercial general liability insurance and that the policy would identify Durkin as an additional insured. B3's policy with Country provides that the policy period was between October 22, 2016, and October 22, 2017, and it states in two endorsements that "an additional insured" is "[a]n entity listed as an additional insured on a certificate of insurance issued and approved by us during this policy period." On April 5, 2017, Country issued a certificate of insurance naming Durkin as an additional insured, and under the "coverages" section of the certificate, it provides that Durkin is an additional insured for the policy effective October 22, 2016, and expiring October 22, 2017. Thus, based on the plain language of the policy, Durkin was an additional insured during the policy period of October 22, 2016, to October 22, 2017, because it was listed as an additional insured on a certificate of insurance issued and approved by Country during the policy period.

¶ 49     In addition, the certificate of insurance states in capital letters that it "is issued as a matter of information only," "confers no rights upon the certificate holder," and "does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below." Thus, the certificate of insurance contains language and disclaimers that provide evidence of Durkin's insurance coverage as an additional insured on Country's policy for the policy period, and the certificate is not a separate and distinct contract for insurance. See *U.S. Fidelity & Guaranty Co. v. Shorenstein Realty Services*, *LP*, 591 F. Supp. 2d 966, 969 (N.D. Ill. 2008) (where the certificates of insurance were issued after the incident and stated that they were issued "as a matter of information only," conferred "no rights upon the certificate holder," and acknowledged that they did not "amend, extend or alter the coverage afforded" by the policy, the court concluded that the certificates "with disclaimers like these are 'evidence of insurance coverage, and not [] separate and distinct contract[s] for insurance or part of the insurance contract' "); see also 3 Couch on Insurance § 40:31 ("[g]enerally, a certificate of insurance is not considered to be a part of the insurance contract; it is merely evidence of the insurance" and "a certificate of insurance cannot contradict the terms of a policy but instead only provides information as to the contents of the policy").

¶ 50     Country argues that the issuance of the certificate itself was the defining event which created Durkin's status as an additional insured under the policy. Country asserts that because the certificate was issued about one hour after the accident on April 5, 2017, Durkin was not covered at the time of Moyett's accident under both the known loss doctrine and the terms of the policy. Under the known loss doctrine, an "insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio*, unless the parties intended the known loss to be covered." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 103 (1992).

Under the terms of the policy, insurance only applies to bodily injury "which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C1."

¶ 51        Here, as previously stated, on October 6, 2015, which was before the April 5, 2017, incident, B3 and Durkin entered into the contract whereby B3 would purchase commercial general liability insurance. An additional insured under the policy is "[a]n entity listed as an additional insured on a certificate of insurance issued and approved by us during this policy period." The policy period was October 22, 2016, to October 22, 2017. The bodily injury occurred on April 5, 2017, and the certificate of insurance was issued that same day, both of which occurred during, and not before, the policy period. Country has not directed the court to any language in the policy that excludes coverage if the certificate of insurance is issued during the policy period but after a covered incident. Thus, we are unpersuaded by Country's argument that the known loss doctrine and the policy precluded Durkin as an additional insured because the certificate of insurance was issued one hour after Moyett's accident. See *U.S. Fidelity & Guaranty Co*, LP, 591 F. Supp. 2d at 970 ("The certificates of insurance did not have to issue prior to the [incident] for defendants additional insured status to attach."). Accordingly, the circuit court properly denied Country's motion for summary judgment and found that Durkin was an additional insured.

¶ 52                                    Durkin's Appeal

¶ 53                              Country's Duty to Defend

¶ 54        Durkin contends that the circuit court erred when it denied its motion for summary judgment and found that Country did not have a duty to defend or indemnify Durkin in the underlying case. Durkin argues that the underlying pleadings, including the allegations contained

-18-

in ComEd's and Tribus's third-party complaints and the relevant policy and contract language, show that the policy covers Durkin as an additional insured for the incident. Durkin further contends that to trigger coverage, the policy only required that B3's acts or the acts of someone acting on B3's behalf be a cause of the underlying plaintiff's alleged bodily injuries. Durkin asserts the court misinterpreted the policy when it analyzed what triggers coverage under section 10(b) of the "Additional Insured - Multiple Interests Endorsement," as it read the policy as requiring that *Durkin's "liability* have been caused in whole or in part by B3's acts or omissions." (Emphasis in original.) Durkin asserts that "bodily injury" rather than "liability" is modified by the phrase "caused, in whole or in part, by" and that "Durkin is entitled to coverage for claims against it where B3's negligence is alleged to have caused Moyett's bodily injury."

¶ 55        "In a declaratory judgment action when the issue is whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy." *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co.*, 2019 IL App (4th) 180411, ¶ 25. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp.*, 154 Ill. 2d at 108. Although the threshold for pleading duty to defend is low "this threshold is not nonexistent: an insurer may justifiably refuse to defend against the underlying action if the complaint clearly does not allege facts potentially within coverage." *L.J. Dodd Construction, Inc. v. Federated Mutual Insurance Co.*, 365 Ill.App.3d 260, 262 (2006). "In making this determination, the allegations in the underlying complaint must be liberally construed in favor of the insured." *Core Construction Services of Illinois*, Inc., 2019 IL App (4th) 180411, ¶ 25.

¶ 56    The policy's additional insured insurance coverage states "this insurance is limited to its liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by: a. Your acts or omissions; or b. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations performed for that insured." Applying the principles above, we conclude that the circuit court properly determined that Country did not have a duty to defend Durkin in the underlying action.  The underlying complaint does not contain any allegations against B3 nor any allegations that Moyett's injuries were caused in whole or in part by an act or omission of B3. Under the plain terms of the policy, the language "*caused in whole or in part, by*" means that Durkin's "liability for bodily injury" must be "*caused in whole or in part, by*" some act or omission of B3 or someone acting on B3's behalf. However, there are no facts in the complaint that suggest that any act or omission of B3 or someone acting on B3's behalf caused, in whole or in part, Moyett's injuries or Durkin's liability. There are no allegations that suggest B3's act or omission caused in whole or in part the defective equipment that caught fire or caused in whole or in part Moyett's injuries.

¶ 57    Durkin asserts that because the policy did not define "caused by," it only had to show "but for" causation to trigger the duty to defend. It argues that "but for" causation only required Durkin to show that the employee would not have been at the place where the injury occurred but for his employment and that when an employee is working for his employer and injured, his actions are on his employer's behalf and a "but for" cause of his injury.

¶ 58    To support Durkin's argument that "but for" causation applies, it cites *American Economy Insurance Co. v. DePaul University,* 382 Ill. App. 3d 172, 178 (2008) and *Aetna Casualty and Surety Company v. Ocean Accident & Guarantee Corporation, Ltd*., 386 F.2d 413, 415 (1967). In both cases, the policies contained "arising out of" language and the courts

concluded that this phrase is broad and that "but for" causation satisfied the language. *American Economy Insurance Co.*, 382 Ill. App. 3d at 178; *Aetna Casualty and Surety Company, Ltd.*, 386 F.2d at 415. However, the policy language at issue does not contain the phrase "arising out of" but rather states that additional insured insurance "is limited to its liability for 'bodily injury' ***caused, in whole or in part, by*" an act or omission of B3 or an act or omission of those acting on B3's behalf. (Emphasis added.) Thus, we are unpersuaded by Durkin's argument that the "caused, in whole or in part" language in the policy requires only a "but for" causation, or a showing that "but for" Moyett's employment with B3, the injury would not have happened.

¶ 59    Further, we note that although federal unpublished decisions are not binding on Illinois courts, "nothing prevents this court from using the same reasoning and logic as that used in an unpublished federal decision." *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63; see also *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st) 103718, ¶ 19 (" 'lower federal court decisions are not binding on Illinois courts, but may be considered persuasive authority' ") (quoting *People ex rel. Ryan v. World Church of the Creator,* 198 Ill.2d 115, 127 (2001)).

¶ 60    In *AIX Specialty Insurance Co. v. Raincoat Roofing Systems, Inc.,* No. 1:19-CV-02385, 2022 WL 742430, at *2-3 (N.D. Ill. Mar. 11, 2022), a case from the federal district court of the Northern District of Illinois, the policy at issue provided coverage for "an additional insured only with respect to liability for 'bodily injury' ***caused, in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omission of those acting on your behalf; in the performance of your ongoing operations for the additional insured." The employee died while working for his employer, Chano's Roofing Corporation, which was a subcontractor on a construction project for Raincoat Roofing Systems. *Id.* at 1. The estate's underlying complaint

against Raincoat, did not allege any negligent act by Chano's, nor any fact to suggest the potential for Raincoat to be liable based in whole or in part on Chano's negligence, and the court found the Chano's insurance policy did not cover Raincoat as an additional insured. *Id.* at 6, 8. In doing so, the court noted "it doesn't take much for an underlying complaint to trigger a policy's additional insured coverage, but there must be some fact alleged, if only indirectly, that potentially brings the underlying lawsuit within the scope of the policy." *Id.* at 6. The court stated that the Chano's and its insurer did not agree that the policy would cover an additional insured for "any bodily injury occurring while Chano's was performing work under the [subcontractor agreement]" but agreed that coverage would extend "only for those injuries 'caused in whole or in part, by [Chano's] acts or omission." *Id.* at 7. There were no allegations in the underlying complaint that suggested that Chano's caused any injury merely by showing up and performing the work it contracted to perform. *Id.* The court stated that "it is inconceivable***that an additional insured could be covered for any injury that arises 'from the mere fact that an employee…was present and performing the subcontracted work.' " *Id.*

¶ 61    In the case at hand, the policy does not show that the parties agreed that additional insured coverage would be provided for any bodily injury that occurred while B3 was performing work for Durkin. Rather, the policy states that additional insured coverage is limited to "its liability for 'bodily injury' *** *caused, in whole or in part, by*" B3's acts or omissions or the acts or omissions of those acting on B3's behalf. Thus, we disagree with Durkin's contention that the mere fact that Moyett, an employee of B3, was injured on the jobsite while working for B3 was sufficient to trigger a duty to defend under the policy. See *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312, 319 (2009) (the court rejected the defendant's contention "that the mere fact that an employee of a primary insured is injured on the

jobsite is, by itself, sufficient to give rise to an inference of negligence on the part of [named insurer] so as to trigger a duty to defend" on the part of the insurer).

¶ 62      In addition, we note that "[u]nder certain circumstances, in determining whether there is a duty to defend or indemnify, a court may look to 'true but unpleaded facts,' of which the insurer has knowledge, that potentially bring the underlying claims within policy coverage." *Maryland Casualty Co. v. Dough Management Co.,* 2015 IL App (1st) 141520, ¶ 56. Here, Durkin has not presented any facts, of which Country has knowledge, regarding B3's acts or omissions that caused injury to Moyett or caused the defective equipment that caught fire. The subcontract between Durkin and B3 included in the record does not provide what responsibilities B3 had with respect to the equipment or Moyett's job.

¶ 63      Accordingly, Durkin has not demonstrated that there is additional insured coverage for the underlying action. Durkin has not demonstrated that B3's acts or omissions or the acts or omissions of someone acting on B3's behalf caused in whole or in part the underlying plaintiff's injuries or Durkin's liability.

¶ 64                                Third-Party Complaints

¶ 65      Durkin argues that the circuit court erred when it refused to consider the allegations contained in ComEd's and Tribus's third-party complaint in the underlying action to determine Country's duty to defend. In reviewing whether an insurer has a duty to defend, a circuit court may consider evidence beyond the underlying complaint if in doing so, it does not determine an issue critical to the underlying action. *Core Construction Services of Illinois, Inc*., 2019 IL App (4th) 180411, ¶ 26. However, "there are limitations on whether the trial court must necessarily consider a third-party complaint prepared by the additional insured seeking coverage." *Pekin Insurance Co. v. United Contractors Midwest, Inc.*, 2013 IL App (3d) 120803, ¶ 29. The court

will decline to consider a third-party complaint filed by a putative additional insured to bolster its claim of coverage. *National Fire Insurance of Hartford,* 392 Ill. App. 3d at 322.

¶ 66    ComEd's third-party complaint filed in the underlying action asserts allegations against B3, including that B3 failed to, *inter alia*, properly and safely train, manage, supervise, and instruct Moyett's work, failed to provide proper equipment to Moyett, failed to maintain the equipment, failed to warn Moyett of the defective condition posed by the equipment, and failed to instruct its employees on proper safety measures. It alleged that Moyett's injuries were caused by B3. However, ComEd is a putative additional insured, as it requested coverage from Country in the underlying action as an additional insured under B3's policy with Country.[1] Because ComEd is seeking coverage from Country as a putative additional insured under the policy, the circuit court did not err when it did not consider the third-party complaint, which Durkin is using to support its position that Country had a duty to defend Durkin in the underlying case. See *National Fire Insurance of Hartford* 392 Ill. App. 3d at 322 (where the court found that the circuit court properly refused to consider the third-party complaint filed by a party seeking additional insured coverage against the named insured in deciding whether the insurer had a duty to defend, it noted that in *American Economy Insurance v. DePaul University*, 383 Ill. App. 3d 172, 321 (2008), we "declined to allow a putative additional insured to bolster its claim of coverage by referencing its own third-party complaint").

¶ 67    In addition, ComEd filed its third-party complaint against B3 *after* Country filed the complaint for declaratory action. The timing of this filing suggests that ComEd sought to add

_____

[1] As previously stated, in Country's complaint for declaratory action, it stated that ComEd tendered a defense in the underlying case to Country, asserting it was an additional insured under the policy. Thereafter, ComEd filed a motion for summary judgment against Country, asserting that it was an additional insured on the policy and that Country had a duty to defend ComEd in the underlying action. In the circuit court's December 6, 2019, written order, it denied ComEd's motion for summary judgment and found that ComEd was not an additional insured under the policy and had no duty to defend ComEd.

allegations against B3 in the third-party complaint that were not included in the underlying complaint, *i.e.,* that B3 was somehow negligent. See *National Fire Insurance of Hartford*, 392 Ill. App. 3d at 322 (where the additional insured filed its third-party complaint against the insured in the underlying case after the insured brought the declaratory judgment action, the court stated that it faced an additional strike and "the timing of the filing suggests the third-party complaint sought to add what the underlying construction negligence complaint did not state, that [the named insured]" was somehow contributory negligent"); see also *Pekin Insurance Co.*, 2013 IL App (3d) 120803, ¶ 32 (where the additional insured filed its third-party complaint after the insurer initiated the declaratory action, the court stated it would not consider the additional insured's potentially self-serving, third-party complaint for purposes of summary judgment).

¶ 68      Further, as for Tribus's third-party complaint, Durkin argues on appeal that it was "error for the circuit court to refuse to consider the allegations of Tribus's third-party complaint." We note that Tribus filed its third-party complaint against B3 on April 3, 2019, about two years after Country filed this declaratory action in June 2017, and it contains similar allegations against B3 as contained in ComEd's and Durkin's third-party complaints against B3. Durkin asserts that Tribus was an uninterested party, and its third-party complaint should be considered unless there is an indication that the pleading was self-serving, or filed to fill in information to support coverage. See *Farmers Auto Insurance Association v. Neumann*, 2015 IL App (3d) 140026, ¶ 12 (where the complaint at issue was filed by an outside party and not a third-party seeking coverage as a putative additional, the court concluded that the circuit court should have considered it even though it was filed after the declaratory action, noting that there was no indication it was self-serving, or filed merely to fill in information). Country argues that Durkin did not submit Tribus's third-party complaint to the circuit court for consideration until it filed its

motion to reconsider and that the court correctly denied Durkin's motion to reconsider. In Durkin's reply brief, it does not respond to Country's argument that it did not submit Tribus's third-party complaint until it filed its motion to reconsider.

¶ 69       In the briefing on Durkin's motion for summary judgment, Durkin only argued that the circuit court should consider ComEd's third-party complaint. Also, in Durkin's motion for summary judgment, it stated that "Moyett has pleaded multiple theories against Durkin that are potentially covered under the policy when considered in light of ComEd's third-party complaint" and the "trial court should use the underlying complaint, ComEd's third-party complaint, and the relevant policy and contract language." Durkin requested the court find that the underlying plaintiff and third-party plaintiff ComEd pled allegations against Moyett and B3 that are potentially covered by the Country policy. In Durkin's reply to the motion for summary judgment, it continued to argue that the court should consider ComEd's third-party complaint and did not argue that it should consider Tribus's third-party complaint. It stated that the only question for the court is "whether it should look at the additional pleadings—ComEd's third-party complaint and affirmative defenses—in the underlying matter to determine coverage."

¶ 70       In Durkin's motion to reconsider the court's ruling on its motion for summary judgment, it argued that the court "should have looked to ComEd's third-party complaint" and asserted that "ComEd's third-party complaint did not bolster Durkin's claim because B3 admits that the relevant allegations are true." On August 28, 2020, the court issued an order that provided that the ruling date on Durkin's motion to reconsider was reset to September 11, 2020.

¶ 71       Thereafter, on September 3, 2020, Durkin filed a "motion for leave to supplement briefing," to which it attached Tribus's third-party complaint and argued that the court should look at Tribus's third-party complaint based on *Scottsdale Insurance Co. v. Columbia Insurance*

*Group, Inc*., 972 F.3d 915, 924 (7th Cir. 2020). It argued *Scottsdale Insurance* addressed the use of third-party complaints and that Durkin was not "aware of any previous decision that directly addressed a court's use of a third party complaint from a party not seeking coverage."

¶ 72    On September 9, 2020, Country filed an opposition to Durkin's motion for leave to supplement briefing, in which it argued, *inter alia,* that *Scottsdale Insurance* did not represent a change in the law and that it "simply rehashe[d] existing Illinois law, all of which was in place at the time [Durkin] filed its Motion for Reconsideration." It also asserted that Tribus's third-party complaint was not newly discovered evidence, as it was filed on April 3, 2019, and even though Tribus's third-party complaint "was filed <u>seventeen months ago</u>, this is the first mention of it by [Durkin] and Tribus' pleading is not included in [Durkin's] Second Amended Counterclaim which it filed in July, 2019, or any subsequent pleadings or briefs." (Emphasis in original.)

¶ 73    Thereafter, the record shows that the circuit court entered an order on September 11, 2020, that stated that the ruling date on all pending motions was reset to September 25, 2020. The record also contains an order entered by the circuit court on February 5, 2021, that states that due to the COVID-19 pandemic, the ruling date "on your motion" must be reset to February 26, 2021. The next order in the record is the circuit court's February 26, 2021, written order on Durkin's motion to reconsider, where it found that Durkin could not rely on ComEd's third-party complaint because it was brought by a similarly situated putative insured. In the order the court did not address Durkin's' motion for leave to supplement briefing or Tribus's third-party complaint.

¶ 74    From our review of the record, there are no orders addressing the court's ruling on Durkin's motion for leave to supplement briefing. Durkin does not direct us to any order in the record that addressed Durkin's motion for leave to supplement briefing and allowed Durkin to

supplement the briefing. Thus, we do not know if the court ever granted Durkin leave to file the motion for leave to supplement briefing, or if Tribus's third-party complaint and Durkin's argument regarding the third-party complaint were before the court when it issued its February 26, 2021, order on Durkin's motion to reconsider. "It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise." *Commerce Trust Co. v. Air 1st Aviation Companies, Inc.*, 366 Ill. App. 3d 135, 142 (2006). Thus, as the party who filed the motion for leave to supplement briefing, it was Durkin's burden to request the court to rule on the motion, and when no ruling is made on the motion, we presume that it was abandoned. Further, the "[f]ailure to obtain a ruling on a motion prior to filing a notice of appeal serves as an abandonment of the motion and results in the procedural default of any issue pertaining to the motion for purposes of appeal." *Kagan v. Waldheim Cemetery Co.,* 2016 IL App (1st) 131274, ¶ 58. Accordingly, Durkin's failure to obtain a ruling on the motion for leave to supplement briefing resulted in an abandonment of the motion and created a procedural default of any issue related to that motion, which includes consideration of Tribus's third-party complaint by the circuit court, for purposes of appeal. Thus, we will not address the issue on appeal.

¶ 75    Underlying Complaint's Silence on B3 and Workers' Compensation Act

¶ 76    Durkin contends that the underlying complaint's silence regarding B3 should be considered in the context of Illinois's workers' compensation laws, and it is a reason to find a duty to defend, not a reason to exclude coverage. Durkin asserts that the "omitted facts regarding Moyett's employment were a result of tort immunity for employers."

¶ 77      The Workers' Compensation Act "provides financial protection to workers for accidental injuries arising out of and in the course of their employment." *Core Construction Services of Illinois, Inc,* 2019 IL App (4th) 180411, ¶ 27. In a declaratory action, "[t]he allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer." *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 36. The " 'silen[ce] as to any acts or omissions' by the named insured must be understood as the possible result of tort immunity for employers under the workers' compensation laws and should not be a basis for refusing to defend an additional insured." *Centex Homes*, 2017 IL App (1st) 153601, ¶ 36 (quoting *Ramara, Inc. v. Westfield Insurance Co*., 814 F.3d 660, 677-78 (3d Cir. 2016)). Further, as previously discussed, if the facts alleged in the underlying complaint potentially fall within the policy's coverage, the insurer's duty to defend arises (*Outboard Marine Corp*., 154 Ill. 2d at 108) and it is "sufficient that the underlying complaint contain[] facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured" (*Centex Homes*, 2017 IL App (1st) 153601 ¶ 39). We also note that an unpublished federal case *AIX Specialty Insurance Co. v. Raincoat Roofing Systems, Inc*., No. 1:19-CV-02385, 2022 WL 742430, at *5 (N.D. Ill. Mar. 11, 2022), which is not binding or precedential, stated that "[n]otwithstanding the need to consider the implications of worker's compensation exclusivity on the allegations of the underlying complaint, Illinois law requires the pleading of some alleged act or omission by [the employer] suggesting that it is liable for the injuries claimed in the underlying suit."

¶ 78      Here, the underlying complaint does not contain allegations suggesting a theory of recovery against B3 or that it was negligent and caused Moyett's injuries. The underlying complaint alleges that ComEd supplied, operated, and owned the mechanical and electrical

equipment located at the property and that the equipment caught fire and caused injury to Moyett. The complaint alleged that ComEd contracted with Durkin to provide services for the equipment and that Durkin failed to maintain the equipment, supplied defective equipment, and failed to warn Moyett of the defective condition posed by the equipment. The complaint does not plead any allegations regarding B3's role with the equipment or any facts regarding its responsibility with respect to the equipment that malfunctioned and caught fire. See *e.g., Centex Homes*, 2017 IL App (1st) 153601, ¶ 43 (where there were no direct allegations in the underlying complaint against the named insured, the court found that it sufficiently alleged facts to support a theory of recovery, noting that the complaint made clear that the named insured was "the party responsible for building the balloon wall and that [the underlying plaintiff] was injured when the wall fell and struck him"); see also *AIX Specialty Insurance Co. v. Raincoat Roofing Systems, Inc.*, No. 1:19-CV-02385, 2022 WL 742430, at *5 (N.D. Ill. Mar. 11, 2022) (where the defendant argued that the workers' compensation laws explained the complaint's silence as to the employer, the federal district court concluded that the insurer did not have a duty to defend where the complaint included no allegations that suggested that any acts or omission by the employer caused, in whole or part, the plaintiff's death).

¶ 79        Further, Durkin asserts that the underlying complaint's silence is explained by the workers' compensation laws and that "Moyett could not sue his employer." Durkin does not direct this court to any authority to support that workers' compensation laws restricted the underlying plaintiffs from pleading any allegations in their complaint suggesting a theory of potential liability against B3 based on its acts or omissions or any allegations with respect to its role with the equipment and Moyett's injuries. See *AIX Specialty Insurance Co. v. Raincoat Roofing Systems, Inc.*, No. 1:19-CV-02385, 2022 WL 742430, at *n.6 (N.D. Ill. Mar. 11, 2022) ("Workers'

compensation exclusivity doubtless explains why employers are not typically named as defendants in the complaints underlying duty to defend claims by additional insureds, but the exclusivity provision in no way restricts them from alleging a theory of vicarious liability against a third party premised on an employer's acts or omissions.").

¶ 80　　In addition, we note that to support Durkin's argument that the underlying complaint's silence regarding B3 should be considered in the context of Illinois's workers' compensation laws, Durkin cites *Hastings Mutual Insurance Co. v. Blinderman Construction Co.,* 2017 IL App (1st) 162234. In *Blinderman*, it was the insurer's burden to establish that a policy exclusion applied. *Blinderman Construction Co.,* 2017 IL App (1st) 162234, ¶¶ 19, 24. There, the underlying complaint did not specifically allege that the employer's acts or omissions caused the injury, and the court found that the complaint's silence regarding the employer's acts or omissions did not suffice to meet the insurer's burden of showing that the employer's acts or omissions did not contribute to causing the injury. *Id.* Here, it was Durkin's burden to establish additional insurance coverage under the policy. See *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009) ("This court has long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy."). Thus, *Blinderman* is distinguishable.

¶ 81　　Accordingly, we are unpersuaded by Durkin's argument that the court erred when it did not consider the silence in the underlying complaint in the context of workers' compensation laws. The court properly denied Durkin's motion for summary judgment and found that Country did not have a duty to defend Durkin in the underlying action.

¶ 82　　Lastly, we note that Country named the underlying plaintiffs as defendants in its complaint for declaratory judgment in this instant case. The underlying plaintiffs' attorney filed an appearance on their behalf and filed an answer to the second amended complaint for declaratory

judgment. However, the underlying plaintiffs did not participate in the briefing on the motions for summary judgment. In the circuit court's May 13, 2020, written order that denied Durkin's motion for summary judgment and found that Country had no duty to defend or indemnify Durkin in the underlying action, the court also stated that "[t]his is a final order that disposes of the case in its entirety," which would include the underlying plaintiffs who were named as defendants. The underlying plaintiffs have not filed an appearance in this case on appeal. Implicit in the circuit court's order that denied Durkin's motion for summary judgment and found that Country did not have to defend or indemnify Durkin in the underlying action was that underlying plaintiffs would not be covered under the policy and Country owed them no duty.

¶ 83                                    III. CONCLUSION

¶ 84        Based on the foregoing, we affirm the circuit court's order that denied Country's motion for summary judgment and found that Durkin was an additional insured on the policy. We affirm the circuit court's order that denied Durkin's motion for summary judgment and found that Country did not have a duty to defend Durkin in the underlying action.

¶ 85        Affirmed.